**UNITED STATES of America, Appellee,**

v.

**Joseph SMITH and Marty Cannon, Appellants.**

**Nos. 483, 592, Dockets 79–1293, 79–1294.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1980.

Decided April 2, 1980.

Rhonda C. Fields, Asst. U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., New York City, Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Bonnie P. Josephs, New York City, for appellant Smith.

Clarence B. Jones, New York City, for appellant Cannon.

Before MOORE, FRIENDLY and MESKILL, Circuit Judges.

MOORE, Circuit Judge:

After a jury trial in the United States District Court for the Eastern District of New York before the Honorable Mark A. Costantino, Joseph Smith and Marty Cannon were convicted of conspiracy to commit bank robbery, armed bank robbery, and unarmed bank robbery. The issues raised by this appeal are whether the trial court properly denied the defendants' pre-trial motion to suppress evidence seized during a warrantless automobile inventory and whether articles so seized were properly admitted into evidence at the trial.

At 10:00 A.M. on February 27, 1979, three men entered a Chase Manhattan Bank branch in Staten Island, New York. One of the men vaulted the counter and demanded the teller give him whatever money was there. He remained behind the counter for five to ten minutes, talking to the teller as he collected the cash. At the same time

another robber walked up to the desk of the assistant manager and, pointing a gun, demanded to be taken to the vault. The assistant manager complied, and, after filling up a sack with money from the vault, the three robbers fled with $124,539 in cash.

When the assistant manager was shown a seven picture FBI photospread two days after the robbery, he identified the picture of Joseph Smith as closely resembling the man who had wielded the gun. That same day the teller identified a figure in a bank surveillance photo as the robber who had vaulted the counter. Twelve days later when presented with a photospread and asked if she recognized anyone who was in the bank the day of the robbery, the teller selected the picture of Marty Cannon as resembling the robber who had vaulted the counter and spoken to her.

On February 28, 1979, the day after the robbery, Smith (who did not have a driver's license) persuaded his sister to rent a car for him from a Staten Island agency. On March 8, 1979, Smith was arrested in Baltimore, Maryland, by City Police Officer Charles Busse for speeding and driving without a license (Smith was driving the rented car at the time). While on foot patrol on March 17, 1979, Officer Busse observed Smith and another man working under the hood of a 1977 Buick parked along a Baltimore street. Shortly thereafter Officer Busse saw the two men get in the car and drive away. He called a patrol car and followed the 1977 Buick for a short distance. When he ascertained that Smith was in the driver's seat, he pulled the car over and asked Smith for his driver's license. Smith could not produce any license, and was arrested. Smith's companion was told he could leave, but as he did so, Officer Busse observed a brown manila envelope containing marijuana on the floor by the passenger seat. The companion was also arrested, and both men were charged with possession of marijuana and placed in a police paddy wagon.

Pursuant to Baltimore police procedures, the officers took the car keys and unlocked the glove compartment and trunk in order to remove the contents for inventory and safekeeping. A temporary Pennsylvania registration certificate found in the glove compartment listed the owner of the car as one Foster Thompson. Among the items taken from the trunk were: a white plastic bag containing several photographs, a recent Florida hotel bill and a birth certificate in the name of Martin Cannon; a blue Tourister flight bag containing a pair of diamond-soled sneakers; and a larger blue Tourister suitcase containing various items of clothing. The flight bag was marked with an "M. Cannon" identification tag.

Immediately after the property was removed, the car was towed to the Baltimore city yard. The property was taken to the Baltimore Police Department Northwest District Office, where it was reinventoried. FBI Special Agent Samuel M. Wichner examined the property there during the late Saturday and early Sunday morning hours of March 17th through 18th. The property was then removed to Baltimore Police Headquarters, where it was placed in a storage room for safekeeping. Agent Wichner took possession of the property on April 26, 1979, and sent the diamond-soled sneakers to the FBI laboratory in Washington, D.C. for analysis. There it was positively established that one of the sneakers matched the latent sneaker prints lifted from the bank's counter by the FBI the day of the robbery. Also, a photograph found in the white plastic bag showed Cannon in the shoes and jumpsuit worn at the bank by one of the robbers, and a matching sweatsuit was found in the larger suitcase.

Smith and Cannon were indicted in the Eastern District of New York on April 5, 1979 for conspiracy to commit bank robbery, 18 U.S.C. § 371, armed bank robbery, 18 U.S.C. §§ 2113(d) and 2, and unarmed bank robbery, 18 U.S.C. § 2113(a) and 2. On June 13th a hearing was held before Judge Costantino during which the defendants attempted to suppress all the physical evidence—including the sneakers, sweatsuit, photograph, birth certificate, and other papers—that had been secured by the Baltimore Police Department officers pursuant

to their warrantless inventory of the 1977 Buick and its contents. Neither Smith nor Cannon presented any evidence at the suppression hearing, and neither defendant claimed any possessory or ownership interest in the 1977 Buick or its contents. The trial court refused to suppress the evidence, finding that the car was lawfully stopped, that the evidence was obtained pursuant to a valid inventory search of the car for the purpose of securing the property, and that Cannon had no standing to object to the inventory search. (App. 40–41, 44 and 46). The trial was held on June 14 and 15, 1979, and the jury returned a verdict of guilty on all three counts for both defendants. On August 2 and 3, 1979, both Smith and Cannon were sentenced to concurrent terms of imprisonment of five years on Count One, twelve years on Count Two, and twelve years on Count Three.

The central issue Smith and Cannon raise on appeal is whether the evidence seized during the warrantless inventory of the 1977 Buick should be suppressed. Smith argues that it must, relying on the holding of *Arkansas v. Sanders*, 442 U.S. 753, 766, 99 S.Ct. 2586, 2594, 61 L.Ed.2d 235 (1979), "that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile" lawfully stopped by the police. Cannon, relying on *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960), argues that despite his lack of a proprietary or possessory interest in the vehicle, he still has standing to challenge the validity of the search because he was the person "against whom the search was directed". The Government, he claims, must not be allowed to use the fruits of the search against him after denying him standing to challenge the search.

■ The latest pronouncement of the Supreme Court in this area of search and

seizure law is *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Prior to *Rakas*, the question of whether a defendant had standing to suppress seized evidence was couched in terms of whether he was "legitimately on [the] premises where a search occurr[ed]", *Jones v. United States*, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960). In our post-*Rakas* world, however, a defendant is obliged to show that he had a legitimate expectation of privacy in the area searched before he can invoke the protection of the Fourth Amendment. This analytical approach has already been utilized by this Court in *United States v. Ochs*, 595 F.2d 1247, 1252–53 (2d Cir. 1979), and *United States v. McGrath*, 613 F.2d 361, 365–66 (2d Cir. 1979). *See also United States v. Rivera*, 465 F.Supp. 402, 411 (S.D.N.Y.1979). We hereby apply it again.[1]

■ *Rakas* held that for a defendant to dispute the legality of a search, he must first demonstrate that the Government infringed his individual Fourth Amendment rights. In so doing, *Rakas* reaffirmed the holding of *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967), that the capacity to claim the protection of the Fourth Amendment depends "upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded places", and of *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969), that Fourth Amendment rights are personal rights which may not be vicariously asserted. Thus, the threshold question in such cases is whether the defendant had a legitimate expectation of privacy in the area searched or in the articles seized.

■ Legitimate expectations of privacy are in turn determined "by reference to

---

1. The dissent maintains that the instant case should be remanded for further factual determinations concerning the defendants' standing to contest the search and seizure, asserting that as in *Combs v. United States*, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972), the record here is virtually barren of the facts necessary to determine either defendant's right to contest the search and seizure. Apart from the factors mentioned in text, we note that in *Combs* — unlike the instant case — the Government actually requested a remand for factfinding on the question of standing. *Rakas, supra*, 439 U.S. at 130–31 n.1, 99 S.Ct. at 423–24 n.1.

concepts of real or personal property law or to understandings that are recognized and permitted by society". *Rakas*, 439 U.S. at 144 n.12, 99 S.Ct. at 431 n.12. The defendants in *Rakas* were passengers in a lawfully stopped car. The majority found they

> "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. . . . the fact that they were 'legitimately on [the] premises' in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular area of the automobile searched. . . . We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes. . . . [The defendants here] made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Rakas* at 148–49, 99 S.Ct. at 433 (citations omitted).

Further elucidation of the "legitimate expectation of privacy" standard may be found in Mr. Justice Powell's pivotal concurring opinion. There he underscores that the focus must be "on whether there was a *legitimate* expectation of privacy protected by the Fourth Amendment," *Rakas* at 150, 99 S.Ct. at 434, with the "ultimate question, therefore [being] whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances". *Rakas* at 152, 99 S.Ct. at 435. Reasonableness is determined by considering such factors as the precautions a person takes to maintain his privacy, the way he uses a location, the history of the Fourth Amendment, the property interests involved, and society's recognition of customary behavior. *Rakas* at 152–53, 144 n.12, 99 S.Ct. at 435–36, 431 n.12.

■ Applying this test to the facts of the instant case, we find that neither Smith nor Cannon had a legitimate expectation of privacy in the trunk of the 1977 Buick. Neither Smith nor Cannon owned the automobile. Both denied any ownership interest in the property seized from the trunk, and even argued they had no knowledge of any property in the trunk. (App. 146, Cannon Br. at 19 n.34). Cannon was nowhere near the scene when the car was stopped, and did not control access to the trunk in any way. Although Smith was in the driver's seat, he had no driver's license and the car was registered in another's name.[2] He made no showing that he had any legitimate basis for being in the car at all, and thus fell far short of demonstrating any legitimate control over access to the car's trunk.

Smith and Cannon also fail to demonstrate any legitimate expectation of privacy when the factors enumerated by Mr. Justice Powell for answering his "ultimate question" are applied to the facts of their case. As noted above, Mr. Justice Powell's "ultimate question" is "whether [the defendants'] claim[s] to privacy from government[al] intrusion [are] reasonable in light of all the surrounding circumstances". *Rakas* at 152, 99 S.Ct. at 435. Smith's and Cannon's use of the car is directly relevant to the question of whether they had any legitimate expectation of privacy in it. All we know of Smith's connection with the car is that he was working under the hood and later took it for a short drive to see if it was running properly. Cannon's only connec-

---

2. Smith cites *United States v. Lopez*, 474 F.Supp. 943, 946–47 (C.D.Cal.1979), in support of his argument that his status as driver gives him a sufficient privacy interest in the car to permit him to challenge the warrantless search. An examination of *Lopez*, however, reveals that it is immediately distinguishable from the facts of this case. The court in *Lopez* concluded that a driver who made no proprietary or possessory claim to objects seized during a warrantless search nevertheless had the requisite expectation of privacy because he had been given express permission to use the vehicle, had exclusive control over it, and had made substantial use of it. In the instant case, Smith did not have any express permission to use the car and merely took it for a brief test drive.

tion with the car is that he may have been the owner of the sneakers and other property found in some containers in the trunk. These facts alone do not give Smith or Cannon any legitimate expectation of privacy in the trunk of the car. As previously noted, neither had any property interest in the vehicle. Neither took any precautions to maintain any privacy in any areas of the automobile. Cannon was nowhere near the car and Smith merely took it for a brief test drive. Neither put any property in the trunk and neither claimed any knowledge of the property in there. Such nonexistent use of the trunk area cannot be said to create any expectation whatsoever of privacy in it. Finally, the Supreme Court has read the Fourth Amendment in light of society's recognition that an individual's expectation of privacy in an automobile is significantly lower than his expectation of privacy in a residence. *Rakas* at 148, n.15 and 153–54, 99 S.Ct. at 433, n.15, 435–36. Mr. Justice Powell clearly stated the reasons behind the distinction drawn between automobiles and residences:

> "Automobiles operate on public streets; they are serviced in public places; they stop frequently; they are usually parked in public places; their interiors are highly visible; and they are subject to extensive regulation and inspection." *Rakas* at 154, n.2, 99 S.Ct. at 436 n.2.

In light of all these surrounding circumstances, we find that the defendants' claims to privacy from governmental intrusion are not reasonable. They have simply failed to demonstrate any legitimate expectation of privacy in the trunk of the 1977 Buick or in the contents of any containers found therein. This result is consistent with the recent case of *United States v. Rivera*, 465 F.Supp. 402 (S.D.N.Y.1979). There, the defendant passenger attempted to suppress items seized when the vehicle in which he was riding was stopped and searched without a warrant. The trial court applied *Rakas* and held that defendant "failed to demonstrate that he had any proprietary interest either in the car or the items seized. Accordingly, he lacks a reasonable expectation of privacy in the vehicle and the goods seized therein

and is without standing to challenge the seizure." *Rivera* at 411.

In light of our conclusion that neither defendant has demonstrated any standing to contest a deprivation of their Fourth Amendment rights, we need not consider the applicability of *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). *United States v. McGrath, supra*, at 365–66. However, we note in passing a crucial distinction between *Arkansas* and the instant case. The defendant in *Arkansas* explicitly conceded that the suitcase seized from the trunk of the taxicab he was riding in was his property. *Arkansas*, 442 U.S. at 761 n.8, 99 S.Ct. at 2592 n.8. Since he expressly claimed ownership of the seized property, there was "no question of his standing to challenge the search." *Arkansas, id.* Here, both defendants deny any property or possessory interest in the seized items, and indeed deny any knowledge that the items were in the trunk before and during the search.

Similarly, our conclusion that the defendants have no Fourth Amendment claim obviates any need to decide whether the search was of an inventory or an investigative nature. We do note, however, that it is constitutionally permissible for police to secure and inventory an impounded automobile's contents pursuant to routine custodial procedures. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). True, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), held that absent exigent circumstances a warrantless search of luggage believed to contain contraband cannot be justified under the "automobile exception." But that rule applies to criminal investigative searches where probable cause is of the essence. The search of the vehicle in the instant case was of a non-investigative, routine caretaking nature in which probable cause as to the car's contents was irrelevant. Smith's claim that it was an investigative search due to the alacrity with which the FBI examined the property at Balti-

more Police Headquarters is mere speculation completely unsupported by the record.

■ Smith also argues that the Government's attack on Cannon's standing during the suppression hearing (App. 44–45) constitutes an implied admission that he has standing to contest a deprivation of his Fourth Amendment rights.[3] For his part, Cannon contends the Government cannot use the fruits of the search against him after first denying him standing to challenge the search. The short answer to both these arguments is that *Rakas* rendered such references to standing irrelevant. The focus now is on determining whether each defendant had a legitimate expectation of privacy in the area searched. As discussed above, neither Smith nor Cannon demonstrated any legitimate expectation of privacy in the trunk of the 1977 Buick, much less as to the contents of any packages found therein. As such, the Government did not deprive them of any of their Fourth Amendment rights by searching the trunk and seizing its contents in the course of performing routine custodial police procedures. Similarly, there is no inconsistency between the Government's position that the defendants lacked any expectation of privacy in the trunk and the Government's use of the trunk's contents as important direct and circumstantial evidence of their guilt. The threshold question must be whether the defendants had any legitimate expectation of privacy in the area searched; only after that analysis is completed and the answer is yes may the defendant challenge the use of the fruits of the search as evidence. Thus, the threshold question of whether the defendant had a legitimate privacy expectation and the subsequent use of the fruits of the contested search as evidence are entirely separate and distinct. Once it is established that the defendants had no legitimate expectation of privacy in the area searched, the factfinder is free to draw whatever inferences or conclusions are ap-

propriate from the subsequently admitted evidence.

■ Given our conclusion that the defendants' motion to suppress was properly denied, and viewing the resulting body of evidence in the light most favorable to the Government, we find that there is sufficient proof on which a rational trier of fact could have found beyond a reasonable doubt that Smith and Cannon participated in the bank robbery. The photographic and in-court identifications of Smith and Cannon, combined with the direct and circumstantial evidence flowing from the custodial search of the automobile trunk, was certainly sufficient to prove their guilt.

■ Both the defendants and the Government agree that, pursuant to this Court's decision in *Grimes v. United States*, 607 F.2d 6, 15 (2d Cir. 1979), their convictions for the lesser included offense of unarmed bank robbery, 18 U.S.C. § 2113(a), must be merged into their respective convictions for armed bank robbery, 18 U.S.C. § 2113(d). In light of *Grimes*, Smith's and Cannon's convictions for unarmed bank robbery under § 213(a) are hereby vacated pursuant to *Grimes, supra,* and merged into their convictions under § 2113(d).

■ Smith's claim that the trial court abused its discretion by not sentencing him under the Youth Corrections Act is groundless. It is well-established that "[o]nce it is made clear that the sentencing judge has considered the option of treatment under the Act and rejected it, . . . no appellate review is warranted." *Dorszynski v. United States*, 418 U.S. 424, 443, 94 S.Ct. 3042, 3053, 41 L.Ed.2d 855 (1974). Here, Judge Costantino expressly stated that he considered the option of treating Smith as a youthful offender. (App. at 170–72). And as his stated reasons for rejecting that option indicate, Judge Costantino did not sentence Smith as an adult solely because he

---

**3.** The Government denies that it conceded Smith's standing below. Nevertheless, standing is a question of law and a concession by the Government on a question of law is never binding on this Court. *United States v. Tortorello,*

533 F.2d 809, 812 (2d Cir. 1976). Thus the Government is free to argue the question of Smith's standing even if it "conceded" it during the proceedings below.

was convicted of a serious felony. *United States v. Negron*, 548 F.2d 1085, 1087 (2d Cir.), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977).

 Smith's claim that he was not adequately represented by trial counsel is entirely groundless. Our review of the record below, including the transcripts of the suppression hearing and trial itself, reveals that Smith received more than minimally competent representation. In short, Smith fails to show the representation of his counsel was such as to make the trial "a farce and mockery of justice". *Indiviglio v. United States,* 612 F.2d 624, 627 (2d Cir. 1979).

In summary, we find the defendants failed to demonstrate they had any legitimate expectation of privacy in the trunk of the 1977 Buick or in the contents of any containers found therein. As such, they have not suffered any deprivation of their Fourth Amendment rights. The trial court properly denied their motion to suppress, and the articles seized as a result of the inventory were properly admitted into evidence. We accordingly affirm their respective convictions under 18 U.S.C. § 371 and § 2113(d) and vacate their convictions under 18 U.S.C. § 2113(a).

MESKILL, Circuit Judge, dissenting:

I respectfully dissent.

Like the majority, I view the threshold question in this case to be whether either or both of the defendants had a legitimate expectation of privacy in the contents of the automobile. Unlike the majority, I would not decide this question on the record before us.

As far as can be determined from the record on appeal, the government never put

Smith or Cannon on timely notice of the fact that they would be put to their proof on the issue of their standing to challenge the search. Therefore, the failure of the defendants to offer evidence at the suppression hearing bearing on their relationship with either the automobile or the luggage inside is most likely attributable to the fact that the defendants believed their legitimate expectations of privacy—their standing—to be conceded by the government.[1] This would not have been an unreasonable reading of the government's attempt at the suppression hearing to defend the search, on the merits, as a reasonable inventory search.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court declined to order a remand for factfinding on the issue of ownership of the damning evidence, noting that although the prosecutor had argued below that the defendants lacked standing, the defendants had chosen not to "contest the factual predicates of the prosecutor's argument and instead, [had] simply stated that they were not required to prove ownership to object to the search." *Id.* at 130–31 n.1, 99 S.Ct. at 424 n.1. The *Rakas* Court distinguished the case of *Combs v. United States*, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972), as quite different. "In *Combs*, the Government had not challenged Combs' standing at the suppression hearing and the issue of standing was not raised until the appellate level . . . . Because the record was 'virtually barren of the facts necessary to determine' Combs' right to contest the search and seizure, the Court remanded the case for further proceedings." *Rakas*, 439 U.S. at 130–31 n.1, 99 S.Ct. at 424 n.1. Similarly, in the instant case the record is barren of the facts necessary to determine

---

1. The record reveals that only after the court had announced that none of the items would be suppressed, did the government attorney allude to the question of standing. "Your Honor, just for the record, the Government has a second position that the co-defendant, Mr. Cannon, additionally has no standing in the search . . . ." (Transcript of suppression hearing at

106). No mention of Mr. Smith was made at this time. The court agreed with the government attorney and Mr. Cannon's attorney stated an objection. The suppression hearing was devoted exclusively to testimony concerning the police stop of Smith, the seizure of the evidence from the car, and the inventory procedures of the Baltimore Police Department.

either defendant's right to contest the search and seizure.[2]

When the government has led a defendant to believe that he will not be put to his proof on an issue as to which the defendant bears the burden, it does not seem appropriate for an appellate court to resolve that issue on the resultingly incomplete record. In my view, the facts elicited below, either at the hearing or at trial, neither establish nor belie the proposition that either Cannon or Smith or both had an interest in the luggage found in the trunk of the car sufficient to confer standing to challenge the warrantless opening of that luggage in the absence of consent, exigent circumstances, or another recognized justification. Therefore, we are simply not in a position to draw conclusions regarding the reasonableness or legitimacy of any expectations harbored by Smith or Cannon in regard to the luggage. Where the silence of the record is attributable to the government rather than the defendants, I would not draw inferences adverse to the latter on the basis of the gaps in the record, nor would I substitute guess work for sound factfinding.

Furthermore, I must dissent from any discussion of the lawfulness of the search. Since the majority has determined that the defendants lacked standing, any views expressed by this panel regarding the applicability of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders*, 442 U.S. 235, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), to either investigative or inventory searches are unrelated to the disposition of this appeal. In my view, this area of the law is confused enough without our straining to decide issues not presented by the cases. *See United States v. Ochs*, 595 F.2d 1247 (2d Cir. 1979) (Meskill, *J.*, concurring). I therefore express no opinion on these matters.

---

**2.** The majority states (p. 487) that the defendants denied interest in the items seized and argued lack of knowledge of the property. However, the only support the majority cites for this assertion is a statement in Smith's attorney's summation ("None of this stuff found in the trunk belongs to Joe Smith. No allegation that it belongs to Joe Smith.") and the testimony of the officer who stopped the car that he did not know how the items got into the trunk. I find the former not dispositive and the latter irrelevant.