**Sheldon BARR, Plaintiff,**

v.

**Robert ABRAMS, Orestes J. Mihaly, Mark A. Tepper, Rebecca Mullane, William Bottiglieri and Janey Renee O'Connor, Defendants.**

**No. 85 Civ. 9043(PNL).**

United States District Court,
S.D. New York.

Aug. 7, 1986.

Howard L. Jacobs, New York City, for plaintiff; Howard L. Jacobs, Sheldon P. Barr, of counsel.

Sheldon P. Barr, pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for other defendants; Howard L. Zwickel, Richard G. Liskov, Frank J. Wenick, Asst. Atty. Gen., of counsel.

Robert Abrams, pro se.

## OPINION AND ORDER

LEVAL, District Judge.

This is a motion by defendants to dismiss an action brought under 42 U.S.C. §§ 1983 and 1985. The plaintiff Sheldon Barr is an attorney under investigation by the Attorney General of the State of New York for involvement in a scheme of fraudulent sales of securities, who was charged with contempt for refusal to produce documents and answer questions. The defendants are the Attorney General, three Assistant Attorneys General, and two staff investiga-

tors who arrested Barr under an arrest warrant to answer the contempt charges.

The complaint asserts 12 causes of action, seeks to enjoin defendants from utilizing evidence obtained in violation of Barr's constitutional rights, alleges compensatory damages of $30 million, plus punitive damages of $30 million.

The complaint alleges that, in the course of the investigation into securities fraud, the defendants acting maliciously and without jurisdiction filed a criminal information charging Barr with contempt and obtained an arrest warrant leading to Barr's unlawful arrest and imprisonment. Barr claims the filing of the information was designed to punish him for exercising his Fifth Amendment rights. The complaint alleges further that defendants threatened and harrassed prospective witnesses, unlawfully seized property, submitted false and misleading sworn statements to courts, slandered the plaintiff, and illegally conspired with the Internal Revenue Service. As a result, Barr claims to have suffered financial, mental and physical harm and incurred considerable attorneys fees for which he now seeks compensation.

An order requiring Barr to appear and produce documents of Enersonics Corporation was issued by Justice Thomas Hughes on April 11, 1984. Barr moved to set the order aside and litigated its validity through the state courts for sixteen months before appearing. When he finally did appear in August 1985, he invoked the Fifth Amendment, refused to produce any documents or answer any questions, including the identification of persons having control of the documents. The Attorney General then filed the criminal information charging Barr with criminal contempt. On the Attorney General's application an arrest warrant was ordered by the Supreme Court and was executed by defendants Bottiglieri and O'Connor, who were staff investigators for the Attorney General. Barr then obtained an order on October 21, 1985 dismissing the contempt charge. Thereafter, he brought this action.

For a variety of reasons discussed below, the complaint must be dismissed.

1. *The Prosecutor Defendants.*

It has long been the rule, and recently reaffirmed by the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), that a state prosecutor is immune from a suit for damages under the civil rights acts based on his prosecutorial actions in initiating and presenting the State's case in court. *Imbler* left open whether the same absolute immunity also covers the prosecutor's pre-prosecution investigation. But in any event, all his actions in his official capacity are protected by the qualified (or good faith) immunity which bars a damage action against him unless his conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985).

The Supreme Court made clear in these cases that an objective sought by the immunity rule is not only to determine the result but also to insure that such actions not be prosecuted, because of their tendency to distract government officials from their duties, deprive the public of the services of those appointed to perform them, make officials timorous and fearful in their decisions, and generally disrupt effective government. *See Harlow*, 457 U.S. 816–18, 102 S.Ct. at 2737–38; *Imbler*, 424 U.S. at 423; 96 S.Ct. at 991. The Supreme Court explained that even the taking of discovery entails a large measure of these costs and should not be permitted except where it is clear that the lawsuit is one of substance falling outside the range protected by the immunities.

a. *The Filing of the Contempt Charges.*

As to the filing of the information charging Barr with contempt and the application to the New York court for an arrest war-

rant based on that charge, in taking those actions the Attorney General and his deputy prosecutors were acting in their core court-related role under the absolute immunity of *Imbler*.

Barr seeks to escape *Imbler* absolute immunity by arguing that, under New York criminal law, the Attorney General did not have legal authority to bring such criminal contempt charges in connection with an investigation under Article 23–A of the General Business Law. The argument is specious. Whether New York law confers the authority to prosecute for contempt in these circumstances solely on the District Attorney or also on the Attorney General is a complicated question; the answer to it does not govern the availability of immunity.

■ Section 358 of the General Business Law empowers the Attorney General to "prosecute every person with the commission of a criminal offense in violation of the laws of this State, applicable or in respect of the practices or transactions which in this article are referred to as fraudulent practices." The contempt information was founded on § 215.50(3) of the New York Penal Law, which authorizes prosecution for contempt for "[i]ntentional disobedience or resistance to the lawful process or other mandate of a court...." Barr claims that the contempt prosecution is outside the Attorney General's jurisdiction because the acts constituting the alleged contempt were not "applicable or in respect of the practices or transactions" that were fraudulent. When Barr sought to have the charge dismissed on the grounds that these facts were outside the Attorney General's authority, Justice Sayah ruled against Barr, upholding the Attorney General's authority, which does not help Barr's argument here. But nothing turns on whether this court does or does not agree with Justice Sayah's interpretation of the New York law in its division of responsibility between various prosecuting agencies. Regardless whether the New York courts would confirm that the contempt prosecution related to the Attorney General's investigation in a manner that supports the Attorney General's authority to bring the prosecution (as opposed to the District Attorney), it is clear beyond question that in filing a criminal information the Attorney General and his deputies were acting in a core court-related prosecutor's role which is unmistakably covered by the *Imbler* absolute immunity. Whether the Attorney General was acting within his jurisdiction is immaterial. The availability of the immunity does not turn on whether the prosecutor was acting lawfully. If it did, it would be largely redundant and superfluous. It depends only on whether he was acting as a prosecutor in bringing and prosecuting an action on behalf of the state. The Attorney General and his assistants unquestionably were in filing the contempt information and applying for a warrant. To the extent that this complaint is based on that contempt prosecution, it must be dismissed.

Even if the contempt prosecution for some reason did not qualify for absolute immunity, the result would nonetheless be the same, although reached by a different route of analysis. For in areas that lie beyond the prosecutor's absolute immunity, he enjoys the same qualified (or good faith) immunity as other public officials; that more restricted immunity also would require dismissal in these circumstances.

Barr's argues that the good faith immunity of *Harlow* also does not lie, once again because he contends the Attorney General had no jurisdiction to prosecute for contempt, and, second, because no prosecution for contempt can be appropriate where the contempt consists of refusal to answer questions and produce documents under claim of the Fifth Amendment privilege.

■ Neither of these reasons takes the Attorney General's actions outside of his qualified good faith immunity. As noted above, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional *rights of which a reasonable person would have known." Harlow, supra,* 457

U.S. at 818, 102 S.Ct. at 2738. In order to overcome this limited immunity, plaintiff must do more than convince the court that his interpretation of the rules in question is the correct one. He must show that these conclusions were "clearly established" at the time, so that a reasonable deputy attorney general would have known them. If it was not clearly established that the defendants' actions violated the law—if reasonable persons in these positions might have differed as to whether the contempt prosecution was permitted or forbidden, then the complaint must be dismissed regardless whether the court now concludes that plaintiff's view of the law is the correct one.

As to both issues, the governing law is sufficiently unclear that defendants' actions fall within the scope of the Attorney General's qualified immunity.

The issue of the Attorney General's authority to prosecute for contempt is discussed above. As noted, Justice Sayah ruled that the prosecution was within the Attorney General's authority. Whether his ruling would have been sustained by the highest court of New York is not the issue. Plaintiff cannot prevail unless Justice Sayah was clearly wrong as a matter of New York law. That has not been shown.

 Plaintiff does no better with the question whether his claim of Fifth Amendment privilege immunized him from a charge of contempt. The court order which Barr was charged with violating ordered, among other things, that he produce records of the Enersonics Corporation. He refused under claim of the Fifth Amendment. He also refused to answer questions identifying other persons who had access to the corporation's documents. The question here is whether it was clearly established that the Fifth Amendment privilege shielded him from a judicial order to produce corporate records entrusted to him. The traditional rule has been that a corporation possesses no Fifth Amendment privilege and that an individual custodian of corporate records may not plead the Fifth Amendment as a bar to his production of corporate records. *See Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

A few recent rulings of the Second Circuit have begun to carve an exception suggesting that in limited, and as yet not clearly defined, circumstances, an individual may assert a privilege against his production of corporate records if the act of producing the documents would constitute testimony personally incriminating to him. *See In re Grand Jury Subpoenas Issued to Thirteen Corporations*, 775 F.2d 43, 46 (2d Cir.1985); *In re Two Grand Jury Suepoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir.1985). Justice Sayah relied on those cases in deciding that the contempt information should be dismissed. Barr here relies on them as showing that the illegality of so charging him was clear at the time. The argument is unconvincing.

The line of cases on which Barr relies has begun recently to fashion an exception to a long-established rule. The issue is unclear and confusing. The Supreme Court has not ruled on it. Even overlooking the fact that the Second Circuit cases have not received explicit Supreme Court approval, it is also far from clear that Barr's circumstances fall within the area that the Circuit's cases would protect. It is undisputed (or in any event may be established in many different ways) that Barr is the Secretary of Enersonics Corporation. There can be little doubt that he has access to the corporation's records. His access to those records is not the factor that would incriminate him. Although the records may contain information that is personally incriminating to him, that fact alone does not permit him to claim his personal privilege as to their production. "In producing records as an officer of the company he would not be attesting to his personal possession of them but to their existence and possession by the corporation, which is not entitled to claim a Fifth Amendment privilege with respect to them." *In re Grand Jury Subpoenas Duces Tecum Dated*

*June 13, 1983 And June 22, 1983*, 722 F.2d 981, 986 (2d Cir.1983). *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

I have considerable doubt whether Justice Sayah's ruling on this issue was consistent with the Supreme Court and Second Circuit cases. There is at least a strong argument that Barr had no Fifth Amendment privilege to assert as to the documents. And even if he did have a privilege as to the production of the documents, there is further doubt whether he had a privilege as to the identification of another custodian of those documents. But in any case, my ruling on the question of immunity does not turn on the correctness of Justice Sayah's ruling. The question is rather whether there was "clearly established" law upholding Barr's position. There was not. Accordingly, the rule of *Harlow* requires dismissal of this aspect of the complaint, even if it were found to fall outside the absolute immunity protected by *Imbler*.

b. *The Attorney General's Conduct of the Investigation.*

Other portions of the complaint charge the prosecutor defendants with violation of Barr's constitutional and statutory rights in that they "threatened [a witness] in a state wherein they had no jurisdiction ... and served a subpoena ... when they knew such service to be a nullity (¶ 29); ... threatened the witness that if he did not appear within 3 hours ... to tell the 'truth' about Sheldon Barr, he would be a defendant rather than a witness ... (¶ 30); illegally and unlawfully seized property of certain respondents ... without a search warrant in Massachusetts where they had no jurisdiction ... (¶ 33); told persons that plaintiff [Barr] had engaged in a fraud and sham (¶ 34); ... submitted false and misleading statements ... illegally conspired with the Internal Revenue Service and ... participated in violation of Section 6103 of the Internal Revenue Code (¶¶ 35–36); ... harassed witnessed in order to procure false testimony.... (¶ 37)" These por-

tions of the complaint also are subject to dismissal either by reason of insufficiency of pleading, prosecutorial immunity, or both.

■ First, recognizing the capacity of unfounded suits under §§ 1983 and 1985 to disrupt the delivery of services by public officers, courts have dismissed suits that pleaded violations of constitutional rights in conclusory fashion without specification of the facts constituting a violation. *See Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir.1976).

■ The vagueness of these pleadings is sufficient reason to require their dismissal. Indeed as to several of the allegations, it is doubtful whether they state a violation of plaintiff's rights even in conclusory terms. As an example, the allegation of ¶ 33 of illegal seizure of property does not aver that plaintiff Barr had any protected interest in the property or place searched that would give him standing to complain of the seizure. Nor are Barr's rights implicated in the prosecutors' service of a subpoena on another person outside their jurisdiction. (¶ 29.) I doubt also that a prosecutor violates any law by telling a subject of investigation that he will be a defendant if he does not appear promptly and tell the truth. (¶ 30.)

■ As to the allegations of ¶¶ 35 and 36 that defendants illegally conspired with the Internal Revenue Service, this claim was apparently litigated unsuccessfully by plaintiff in state court. Thus, even if these conclusory allegations stated a claim under § 1983, their assertion here would likely be barred by collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Since they do not state a claim, it is unnecessary to resolve the preclusion issue.

■ In addition to the vagueness of the pleadings, a second reason advanced by the defendants for dismissal of the entire latter group of contentions is the doctrine of immunity of the prosecutor. *Imbler* expressly left open whether the absolute immunity

applies to the prosecutor's preliminary investigative actions as well as to the presentation of the case in court. The Court of Appeals has held that "a prosecutor is insulated from liability where his actions directly concern the pre-trial or trial phases of a case." *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981). The scope of this immunity has recently been defined as reaching all prosecutorial "activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation...." *Barrett v. United States*, 798 F.2d 565, 571–72 (2d Cir. 1986). The *Taylor* Court stated, however, that "[a]bsolute protection does not extend ... to a prosecutor's investigative or administrative acts...." *Taylor*, 640 F.2d at 452. Strong arguments can be mustered on both sides of the dispute.

The preliminary investigative work is not logically or functionally separable from the prosecutor's in-court presentations. Certainly, many decisions made at the investigative stage fall within the category of "decisions of judgment affecting the course of a prosecution" with which the Court of Appeals was concerned. *Taylor v. Kavanagh, supra*. And as this case demonstrates, the subject's ability to challenge these pre-trial investigative decisions in court may as a practical matter so obstruct the prosecution that it never makes it to the trial stage.

Also, as the Supreme Court stressed in *Harlow* and *Imbler*, the costs suffered by the public arising out of lawsuits against its prosecutors are great. The problem is more acute as to prosecutors than many other types of public servants because the nature of their duties is so adversarial that it is likely to provoke vindictive, retaliatory lawsuits. Whenever a prosecutor, no matter how scrupulous and fair, conducts a determined investigation in a difficult area, such as racketeering, governmental corruption, securities fraud, or narcotics, he exposes himself to accusations that he has suborned perjury. Such accusations are easy to make (as witnessed by the allegations in this complaint that the Attorney General suborned perjury by telling a witness that he should tell the truth). In such investigations, the persons whose testimony is sought are often friendly to the subject and hostile to the prosecutor. As the Supreme Court has observed, "[i]t is inevitable that many of those who lose will pin the blame on judges, prosecutors, or witnesses and will bring suit against them in an effort to relitigate the underlying conflict." *Mitchell, supra*, 105 S.Ct. at 2813. If a green light is given by the Supreme Court to such lawsuits, it can be expected that they may become almost as common as today's prison inmate lawsuit.

On the other hand, there are prosecutors who abuse the power of their offices. It is difficult to justify immunizing a prosecutor who, out of vindictiveness, prejudice, corruption, ambition, or a desire to shield the guilty party, would concoct a perjurious case sending away an innocent person.

Because of the inadequacy of the pleading of these allegations and for other reasons discussed below, it is unnecessary now to rule whether the prosecutor's investigative actions here complained of fall within *Imbler's* absolute immunity.[1] I conclude that each of plaintiff's claims against the prosecutors must be dismissed for one or more of the reasons discussed above.

---

1. I note, however, that plaintiff's contention that *Imbler* immunity cannot apply because the Attorney General's investigation was not criminal is without merit. Under § 358 of the General Business Law, the Attorney General has the authority to proceed with criminal charges against those discovered to be engaged in fraudulent activities. The investigation thus serves as much for criminal prosecutions as for civil suits. Indeed plaintiff's complaint alleges that he was "a criminal target of said investigation."

The fact that no criminal instrument had yet been filed does not negate the fact that the Attorney General was a prosecutor investigating matters that might ripen into a criminal prosecution. Moreover, as the Court of Appeals recently explained, the absolute immunity which cloaks prosecutors in their criminal prosecutions and administrative proceedings "should *a fortiori* govern the government attorney's initiation of civil litigation in a state or federal court." *Barrett v. United States, supra*, at 572.

## 2. *The Investigators.*

■ The complaint is also directed against Bottiglieri and O'Connor who are investigators on the Attorney General's staff, empowered as "police officers" under New York Criminal Procedure Law §§ 1.20(32), 1.20(34)(g). Plaintiff's claim against these investigators is apparently based on a false arrest allegation. Since they were acting pursuant to a court-issued arrest warrant which was not facially invalid, their actions were protected by the qualified immunity of *Harlow.*

Barr's reliance on *Malley v. Briggs,* — U.S. —, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), is unavailing. The Supreme Court there held that police officers were answerable in damages, notwithstanding an intervening judicial order approving an arrest warrant, if they sought the warrant based on facts that they must have known would not justify it. That precedent has no application here. These police officers did not apply for the warrant, but merely undertook to execute it. Furthermore, as noted above, there was no clearly established law of Fifth Amendment privilege establishing Barr's right to refuse to obey the court's order to produce corporate documents.

Accordingly, the complaint must be dismissed as against these defendants as well.

## 3. *Abstention.*

■ Even if plaintiff's claims survived the arguments discussed above, another doctrine would require that the action be either dismissed or stayed. That is the principle which requires a federal court to abstain from conducting a lawsuit that interferes with the state's conduct of criminal (or sufficiently similar) proceedings. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (injunctions); *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (declaratory judgments).

This suit could be described as a counterattack to the Attorney General's investigation. Plaintiff Barr has shown himself to be a devout and capable proponent of the maxim that the best defense is a good offense. When the Attorney General secured a court order requiring Barr to be examined and to produce documents, Barr hired as capable a lawyer as can be found and embarked on a strategy of out-litigating his tormentor. As set forth briefly above, Barr's attorney undertook a series of motions and appeals, which, although all were unsuccessful, succeeded in delaying his appearance for sixteen months. There followed Barr's successful motion to dismiss the Attorney General's contempt charges and thereafter this action.

The result has been that after 40 months of litigation the Attorney General had not yet obtained from Barr a single piece of paper or an answer to a question.[2] A part of the relief sought in this lawsuit is an injunction barring the Attorney General from using evidence obtained in deprivation of Barr's constitutional rights. This lawsuit is employed to disrupt the Attorney General's investigation by tying up his deputies and diverting them to their own defense. Furthermore, it seeks to inquire into the prosecutor's investigative maneuvers on the theory that these constitute further abuses of Barr's rights.

■ Federal courts cannot permit the civil rights action to be used as a combative defense against a state criminal prosecutor's conduct of an investigation. The problem identified by the Supreme Court in *Younger* and its progeny was the interference with and disruption of state court criminal and quasi-criminal proceedings by the issuance of federal injunctions or declaratory relief. As the *Younger* Court observed, "[a] federal lawsuit to stop a prosecution in state court is a serious matter." 401 U.S. at 42, 91 S.Ct. at 749. Barr's action seeks both injunction and damages. Regardless of how it is pleaded, the intent, and more importantly the result,

---

**2.** Although it is possible that the Attorney General has dropped the investigation, nothing on the face of the complaint or elsewhere in the papers of this action shows it to be other than a continuing investigation.

are unchanged. A damage action has the same capacity as a suit in equity to obstruct and interfere with the conduct of a criminal prosecution. The necessity of defending Barr's § 1983 action in this court and complying with discovery demands impedes the Attorney General's staff from proceeding further with its investigation and possible prosecution of Barr in state court.

In *Fair Asessment in Real Estate Assoc. v. McNary,* 454 U.S. 100, 111, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981), the Supreme Court recognized that actions other than injunctions or declaratory judgments could "have a similarly disruptive effect." The Court explained that in the context of state tax schemes, "damage actions, no less than actions for an injunction, would hale state officers into federal court everytime a taxpayer alleged the requisite elements of a § 1983 claim." *Id.* at 115, 102 S.Ct. at 186. Surely the targets of investigations into securities fraud are no less inclined to bring the wheels of state government to a grinding halt. Indeed, plaintiff in the instant case has demonstrated a remarkable talent at doing just that.

I note that protection from unconstitutional action by state prosecutors does not require a federal civil rights action. To the extent that the subject of state court criminal proceedings seeks protection from violations of his constitutional rights and from the use against him of unconstitutionally procured evidence, that protection is generally available by motion within the framework of the state proceeding. What the subject accomplishes by bringing his own action in federal court is to put the prosecutor on the defensive and to obtain discovery of the prosecutor's investigation far beyond what is countenanced in state criminal procedure. It interferes unacceptably with the conduct of state criminal prosecutions. To the extent that the subject possesses any valid damage remedy not barred by the prosecutor's immunity, this can be litigated after termination of the criminal proceeding.

CONCLUSION

For the various reasons set forth in this opinion, failure to state valid federal claims, vague and insufficient pleadings, and the immunities of *Harlow* and *Imbler,* defendants' motion to dismiss must be granted. Any pendent state law claims also are dismissed.