**Wallie Cooper SIMPSON and The Lower East Side International Community School, Inc., Plaintiffs,**

v.

**New York City Police Sergeant Steven SAROFF, Badge No. 1155, Two Unidentified Plainclothes New York City Police Officers, Four Unidentified New York City Uniformed Police Officers, Defendants.**

**No. 88 Civ. 3716 (RWS).**

United States District Court, S.D. New York.

June 20, 1990.

Lankenau Kovner & Rickford, by Richard D. Emery, Mark A. Sirota, of counsel, New York City, for plaintiffs.

Victor A. Kovner, Corp. Counsel of the City of New York by Jane L. Gordon, Ave Maria Brennan, Asst. Corp. Counsels, of counsel, New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendant Steven Saroff ("Saroff") has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment or in the alternative, partial summary judgment to dismiss the claims of either plaintiff Wallie Cooper Simpson ("Simpson") or plaintiff Lower East Side International Community School, Inc. ("LESICS") separately. For the reasons set forth below the motion is denied.

### Parties

Simpson is the principal and director of LESICS which, prior to its eviction, operated out of a building at 203 Rivington Street in the borough of Manhattan.

Saroff is a sergeant in the New York City Police Department and assigned to the 7th Precinct located at 19½ Pitt Street in Manhattan. He is presently and was on November 6, 1987 a Patrol Supervisor, which involves supervising police officers and also responding to serious crimes.

### Prior Proceedings

Simpson commenced this action on May 27, 1988 under 42 U.S.C. § 1983 alleging that Simpson was falsely arrested and imprisoned, assaulted and illegally searched and that Saroff violated LESICS' Fourth Amendment right to be free from unreasonable governmental intrusions. Saroff moved for summary judgment urging dismissal of all claims on the grounds that Saroff had probable cause to arrest Simpson for obstruction of governmental administration and that undisputed material facts indicate that the police in arresting Simpson did not use excessive force and that LESICS had no reasonable expectation of privacy because of its holdover tenant status. The motion was heard and submitted on February 16, 1990.

### Facts

A. The Events of November 6, 1987

The following facts are uncontroverted:

On November 6, 1987, Saroff responded to a radio call which required his presence at a public school located at 100 Attorney Street. Upon arrival, Saroff entered the school and was informed by a police officer who had preceded Saroff's arrival, that two of the public school students had been beaten and another child had been robbed, apparently by students from a nearby private school. Those three children, as well as the principal of the public school, an aide to the principal and the father of two of the children, Reverend Rodriquez ("Rodriguez"), were present in the kitchen area of the public school. After arrival, Rodriguez asked Saroff if he would accompany them to talk with the principal, Simpson, of the private school, LESICS. Saroff instructed two of the officers to attempt to locate the mother of the one child who was robbed and on the way to the school Saroff learned that the officers were unable to locate the mother.

Upon arrival at the door of LESICS, the police officers rang the school's bell and Simpson and another woman opened the door. At that time there were seven police officers, including two plainclothes officers,[1] standing in front of the school building, along with the group of civilians.

What follows is disputed. According to Saroff, Simpson asked what the problem was, and Saroff told Simpson that students from LESICS had been accused of assaulting and robbing students from the public school. Simpson then expressed annoyance at the civilians for involving the police and questioned the culpability of her students. She indicated to Saroff that she wanted to call her lawyers, and she instructed an assistant to do so. While a call was being placed to the lawyer, Simpson remained in the doorway, and Saroff remained on the steps in front of the door. Saroff maintains that he asked whether the police, the principal, and Rodriguez could enter to speak with Simpson. Simpson refused. Simpson and the Reverend allegedly engaged in a heated discussion about Rodriguez's children. While waiting in the door-

---

1. Saroff states that he radioed for plainclothes officers to respond to the scene at LESICS because Saroff believed those officers would pose the least amount of disruption among school children.

way for the call to the attorney, Simpson, according to Saroff said, in effect, "Why don't you people come in and we'll talk." Saroff claims to have understood her to mean that everyone should come in, both the civilians and the officers. Rodriguez, nis two children, the public school aide, the other child and the public school principal started to walk into LESICS. As the civilians entered LESICS, Saroff told the two plainclothes officers to accompany them. Saroff intended to wait outside on the steps until the attorney called back.

When the plainclothes officers attempted to follow the civilians in, Simpson allegedly blocked the doorway with her body and grasped each side of the door with her hands. At this point Saroff allegedly told Simpson that he had brought the civilians to LESICS and that he wanted the two plainclothes officers to be with the civilians while they were inside the building. Simpson said "No" and Saroff allegedly told her that he wanted the civilians out of the school to which Simpson again replied, "No." Although Saroff allegedly was unable to see the civilians inside the school from his view, Officers Balestireri, Creta, and Pagano indicate that the civilians were visible inside the doorway.

According to Saroff, Saroff told Simpson two or three times that if she did not let the civilians out she would be arrested for obstructing governmental administration. When Simpson allegedly continued to refuse Saroff's request to let the civilians out and continued to block the doorway, Saroff ordered the two plainclothes officers to place her under arrest. Saroff's own deposition contains conflicting claims as to whether Saroff participated in handcuffing Simpson. Saroff and the other officers on the scene contend that Simpson resisted their attempts to arrest her.

According to Simpson, she never invited the police officers into the school building nor did they attempt to enter. Simpson claims she was never instructed to move away from the doorway, nor was Simpson ever warned that she would be arrested. Once the civilians had entered the school building, they always remained within the view of the police officers standing outside. According to Simpson, Saroff never asked Simpson to allow the civilians to leave the school building, and she never prevented them from leaving. Instead, Saroff allegedly ordered Simpson arrested because she would not give the officers permission to enter the school building. Furthermore, she maintains that she did not resist arrest, but rather submitted to arrest without resistance.

### B. 203 Rivington

LESICS took possession of the building at 203 Rivington as a tenant of New York City (the "City") in May 1976 and remained there for more than twelve years. The School used a television monitor, intercom and buzzer to control entrance to the building.

LESICS signed a lease with the City for 203 Rivington Street, dated January 17, 1980. LESICS paid rent both to the City and the subsequent landlord, Ornette Coleman ("Coleman"). At various times, LESICS engaged in negotiations with Coleman and the subsequent landlord, 203 Rivington Street Associates, for the right to remain in the building at that address.

In August 1985, Coleman entered into a verbal agreement with LESICS to remain in 203 Rivington as a month-to-month tenant. Beginning in 1985, Coleman sought to evict LESICS from 203 Rivington. On January 8, 1986 the State Civil Court ordered possession of 203 Rivington to the landlord. This order was later vacated, and the eviction action against LESICS dismissed. The first attempt was unsuccessful because the Civil Court ruled that the 30–day notice, necessary to terminate a month-to-month tenancy had been served with only twenty-nine days' notice and therefore dismissed the petition. On August 22, 1986 Coleman served LESICS with a second thirty-day notice and on October 30, 1986 Coleman commenced a second summary proceeding to recover possession of the premises. That action was dismissed subsequently as well.

On December 30, 1986, 203 Rivington Associates purchased the building from

Coleman. Between December 30, 1986 and May 1987, LESICS and 203 Rivington Street Associates engaged in amicable but unsuccessful attempts to resolve the dispute over LESICS' continued possession of the building.

On March 27, 1987, 203 Rivington Street Associates served LESICS with a thirty-day notice to terminate LESICS' "month-to-month tenancy". In May 1987, 203 Rivington Street Associates served a petition commencing the third Civil Court summary proceeding against LESICS to recover possession of 203 Rivington Street alleging that LESICS had been a month-to-month tenant pursuant to an "oral rental agreement."

In July 1987, LESICS answered the petition demanding judgment dismissing the petition. On January 6, 1988, LESICS and 203 Rivington Street Associates settled the pending Civil Court action by a court-ordered stipulation that, among other things, permitted LESICS to remain in the building until June 30, 1988. A warrant of eviction was made enforceable against LESICS in September 1988. Consequently, on November 6, 1987, the date of the events in question, LESICS was involved in litigation with 203 Rivington Street Associates in which 203 Rivington Street Associations was seeking to evict LESICS from the building.

*Standards for Summary Judgment*

To grant summary judgment the court must determine that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Donahue v. Windsor Lock Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987) but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Summary judgment enables the court to dispose of meritless claims before becom-

ing entrenched in a costly trial. *Donahue*, 834 F.2d at 58 (citing *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

1. False Arrest and Imprisonment and Improper Search

██ A claim for false arrest or false imprisonment as an unconstitutional deprivation of civil rights under 42 U.S.C. § 1983 may be established only if there was no probable cause to support the plaintiff's arrest and detention. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42 (2d Cir.1985).

According to Saroff, he had probable cause to arrest Simpson for obstruction of governmental administration, a position which rests on disputed facts and is therefore inappropriate for a summary judgment motion on this record. Although a finding of probable cause would dismiss the false imprisonment and invalid search claims, *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *U.S. v. Chadwick*, 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977), a dismissal is unwarranted here on this submission.

2. Excessive Force

██ A claim for use of excessive force as an unconstitutional deprivation of civil rights under Title 42 U.S.C. § 1983 may be established only if the force used was excessive or unreasonable in light of the circumstances. *Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *United States v. Schatzle*, 901 F.2d 252 (2d Cir.1990); *Johnson v. Morel*, 876 F.2d 477 (5th Cir.1989). The circumstances of the arrest here are disputed as to the extent of force used, the resistance to arrest and the participation of Saroff.

██ Saroff contends that summary judgment is proper nevertheless in this case because the injury suffered by Simpson under any circumstances does not rise to the level of a constitutional violation. *See*

*Mark v. Caldwell,* 754 F.2d 1260, 1261 (5th Cir.1985), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985); *Moats v. Village of Schaumberg* 562 F.Supp. 624, 629–30 (N.D.Ill.1983); *Estes–El v. State of New York,* 552 F.Supp. 885, 890 (S.D.N.Y. 1982).

Although not every "push or shove" is actionable under § 1983, a plaintiff alleging injurious or excessive actions by police officers can properly proceed under § 1983. *Robison v. Via,* 821 F.2d 913, 923 (2d Cir. 1987); *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989). The *Robison* Court also held that testimony of bruises lasting "a couple of weeks" was "sufficient to prevent summary dismissal of a § 1983 claim for excessive force." *Id.* at 924; *see also Bellows v. Dainack,* 555 F.2d 1105, 1106 and n. 1 (2d Cir.1977) (alleged arm-twisting and punching sufficient to sustain an excessive force claim). Since Simpson alleges a punched stomach, swollen and bleeding wrists from the tight handcuffs, as well as a faintly detectable scar on her left wrist, her complaint is sufficient to allege a § 1983 claim.

Because genuine issues of material fact exist as to Simpson's and Saroff's conduct during the time of the arrest, and because Simpson has alleged sufficient injury to support a § 1983 claim, the motion for dismissal of the excessive force claim must be denied.

3. Unlawful Search of LESICS

█ Saroff asserts that LESICS' Fourth Amendment claim is improper because: (1) it failed to assert an interest in the property searched, and (2) LESICS, in rental arrears and subject at the time to an eviction action, had no reasonable expectation of privacy in the premises, and therefore no standing to sue. LESICS therefore bears the burden of showing that it had an interest in the property that was searched, a subjective expectation of privacy in the premises, and that this expectation was objectively reasonable. *N.J. v. TLO,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *Smith v. Md.,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d

387 (1978); *Katz v. U.S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *U.S. v. Roy,* 734 F.2d 108 (2d Cir.1984), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986); *U.S. v. Smith,* 621 F.2d 483 (3d Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 875 (1981).

█ Simpson must establish an ownership or possessory interest in the property that was searched. *Barr v. Adams,* 641 F.Supp. 547, 552 (S.D.N.Y.1986), *aff'd* 810 F.2d 358 (2d Cir.1987); *Davis v. Hudson,* 436 F.Supp. 1210, 1213 (D.S.C.1977). "If the appellant does not own or rent the premises searched, however, he may establish standing by demonstrating 'an unrestricted right of occupancy for custody and control of the premises as distinguished from occasional presence'." *United States v. Sarda–Villa,* 760 F.2d 1232, 1236 (11th Cir.1985) (citing *United States v. Bachner,* 706 F.2d 1121, 1126 n. 6 (11th Cir.1983)). LESICS properly has alleged an interest in the premises because it occupied them on a permanent basis, kept up the premises through expenditures on improvements, and exercised at all times the right to exclude others from the premises (by use of video camera and buzzer system at the school's entrance).

LESICS efforts to exclude people by means of the security system described above, also establish that LESICS had a subjective expectation of privacy in the premises. Citizens occupying premises pursuant to a lease agreement have an objectively reasonable expectation of privacy in the premises. *United States v. Showalter,* 858 F.2d 149, 151 (3d Cir.1988). If LESICS was a tenant at the time of the search, a question determined by New York State law, then LESICS had an objectively reasonable expectation of privacy in the property. *See United States v. Curcio,* 705 F.Supp. 237, 240 (E.D.Pa.1988).

New York's Real Property Law ("RPL") § 232–c states in pertinent part:

Where a tenant whose term is longer than one month holds over after the expiration of such term ... the landlord may proceed, in any manner permitted by law, to remove the tenant, or, if the landlord

shall accept rent for any period subsequent to the expiration of such term, then, unless an agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month ...

When LESICS' original lease with New York City expired, it continued to pay rent on a monthly basis to the City, and to the subsequent landlord, Coleman, thus establishing a month-to-month tenancy under § 232–c. *Comorford v. Jones*, 121 Misc.2d 141, 467 N.Y.S.2d 329 (1983); *Park Summit Realty v. Frank*, 107 Misc.2d 318, 322, 434 N.Y.S.2d 73 (1st Dept.App.Term 1980), *aff'd* 56 N.Y.2d 1025, 453 N.Y.S.2d 643, 439 N.E.2d 358 (1982); *Jaroslow v. Lehigh Valley*, 23 N.Y.2d 991, 298 N.Y.S.2d 999, 246 N.E.2d 757 (1969). Therefore, as a tenant, LESICS had a legitimate expectation of privacy in the premises that were searched. *United States v. Showalter*, 858 F.2d 149, 151 (3d Cir.1988).

The nonpayment of rent to the subsequent landlord, 203 Rivington Associates does not automatically strip LESICS of its rights as a tenant on the premises. *See also United States v. White*, 541 F.Supp. 1181, 1183 (N.D.Ill.1982) (an occupant who has not been ousted lawfully from the premises has a legitimate expectation of privacy even though he may be in violation of his lease); *Rakas v. Illinois*, 439 U.S. at 148, 99 S.Ct. at 432–33 (1978) ("legitimate presence on the premises ... cannot be deemed controlling"). New York's Real Property Actions and Proceedings Law ("RPAPL") § 749 states that the landlord-tenant relationship is annulled only upon issuance of a warrant for removal of the tenant. Although several proceedings were commenced to remove LESICS from the premises for non-payment of rent, none were successful. Under the requirements of the law, then, LESICS' tenancy was never terminated because no warrant to remove was issued. Therefore, the land-

lord-tenant relationship between LESICS, Coleman, and subsequently 203 Rivington Associates was not annulled at the time of the search.[2]

LESICS' expectation was thus objectively reasonable. A perfected title is not required to assert a privacy interest; a colorable claim to the property will suffice. *Amezquita v. Hernandez–Colon*, 518 F.2d 8, 11 (1st Cir.1975). Although LESICS may have been in violation of its lease at the time of the search, the law requires that official court orders be issued to terminate a tenant's rights. Such orders were never issued against LESICS and therefore its interests as a month-to-month tenant, including its constitutional expectation of privacy, were intact at the time of the search.

For the foregoing reasons, Saroff's motions for summary judgment on claims of false arrest and imprisonment, illegal search of the purse, excessive force, and unlawful search of the premises are all denied.

This case will be set on the ready trial calendar.

It is so ordered.

2. In an earlier action brought by 203 Rivington Associates against LESICS, LESICS denied the existence of a landlord-tenant relationship. However, LESICS' purpose in so doing was to assert a greater interest in the premises than mere tenancy, thus preventing disposition of the case in a summary proceeding. LESICS' interest in the property, and not LESICS' relationship with 203 Rivington Associates, is the relevant consideration in its unlawful search claim.