OPINION OF THE COURT

Per Curiam.

Final judgment entered April 17, 1980 (Evens, J.) affirmed with $25 costs.
An issue of apparent first impression is posed for our consideration. Section 50 of the Hotel Industry Code (Code [promulgated pursuant to New York City’s rent stabilization laws]), forbids the eviction of a “permanent tenant *** so long as he continues to pay rent”. Sec *319 tian 2k of the Code defines a permanent tenant as one who has resided in a hotel apartment for a period of six months.
On this appeal, the occupancy of an apartment in the Mayflower Hotel is at issue. Tenant’s original three-year lease had expired in 1978. He remained in possession, however, as a “permanent tenant” under the Hotel Code.
During the months of May, 1979 through January, 1980, the tenant refused to pay any rent and landlord thereupon sought to evict him. To that end, landlord served tenant with the 30-day notice provided by section 232-a of the Real Property Law for termination of month-to-month tenancies. Tenant refused to vacate the apartment at the end of the 30-day notice period. Landlord, in response, commenced this holdover proceeding. The issue for decision is whether a holdover proceeding is the proper vehicle through which landlord may seek to evict the rent-defaulting tenant, or whether the landlord is limited to a nonpayment proceeding with its more liberal allowances for cure of a tenant’s rent breach.
Landlord characterized its position as to the propriety of employing a holdover proceeding to oust the “permanent tenant” for nonpayment of rent as a “simple one”. According to the landlord, when tenant’s three-year lease expired on July 1, 1978 he continued in possession as a “month-to-month permanent tenant.” Landlord’s claim that the tenant was a month-to-month tenant was premised on section 232-c of the Real Property Law, which states: “Where a tenant whose term is longer than one month holds over after the expiration of such term *** if the landlord shall accept rent for any period subsequent to the expiration of such term, then *** the tenancy created by the acceptance of such rent shall be a tenancy from month to month”. The landlord contends that under the above section its acceptance of rent after expiration of tenant’s three-year lease created a month-to-month tenancy. As to the effect of the Hotel Code which deemed tenant a “permanent tenant”, landlord is of the view that all those regulations accomplished was to suspend a lessor’s common-law rights to end, at his complete discretion, the tenant’s month-to-month ten *320 ancy. That suspension was contingent, however, on the lessee’s continued payment of rent. Once rent payments were withheld, argues the landlord, it was revested with its common-law right to terminate a month-to-month tenancy at its absolute pleasure. The termination, according to landlord, took effect in the instant case on November 30, 1979, the date specified in the 30-day notice. Landlord claims that with tenant’s term at an end, a holdover proceeding was an eminently correct device to seek tenant’s dispossession. Landlord finds support for its position in the language of section 50 of the Hotel Code, that “[n]o permanent tenant * * * so long as he continues to pay rent to which the owner is entitled *** shall be evicted except on one of the grounds specified in this Code or in the Real Property Actions and Proceedings Law” [emphasis added]. Landlord reasons that a rent default permitted it to proceed with a holdover action, a “ground specified in RPAPL” 711 (subd 2).
Tenant in moving to dismiss the holdover proceeding argued that only a nonpayment proceeding could be maintained for failure to pay rent. Tenant took issue with landlord’s characterization of his postlease status as that of a “month-to-month” tenant. Tenant claimed to be a “statutory tenant” and insisted that the structure of the Hotel Code limited the landlord to a nonpayment proceeding when a tenant failed to pay rent. Since a failure to pay rent was the foundation for landlord’s holdover proceeding, it was an improper instrument to effect an ouster and should, accordingly, be dismissed. Tenant contended additionally that landlord’s 30-day termination notice was defective in that it did not mention the precise grounds for which landlord was evicting tenant.
The wrangle over which summary proceeding — nonpayment or holdover — should have been brought is more than a mere conflict over the correct remedial avenue required to be traversed by the landlord. In the most tangible sense, the substantive rights of the parties hinge on whether a holdover proceeding is sustainable under the facts of this case. From landlord’s perspective, the virtues of a holdover as opposed to the nonpayment *321 proceeding are obvious. Tenant cannot (as is often true in the nonpayment proceeding) cure his default and remain in possession by tendering rent prior to the issuance of the warrant. If, as landlord argues, the month-to-month term has ended and the notice requirements of section 232-a of the Real Property Law have been fulfilled, no defense is available to tenant to avoid the force of the dispossess warrant. For these reasons, tenant strenuously maintains that a nonpayment proceeding is the only mode available to landlord to terminate his tenancy.
Tenant’s position was adopted by Judge Evens who ruled that landlord’s failure to institute a nonpayment proceeding warranted dismissal of his summary proceeding. Also dispositive to the court in dismissing was the fact that the 30-day notice “did not cite the ground for termination.” In our view, the judgment rendered below should be affirmed on the basis of the first ground relied upon by Judge Evens.
ADEQUACY OF THE TERMINATION NOTICE
Initially to be determined is the question of whether the 30-day notice was required to state the precise grounds landlord was evicting tenant for. We believe that no such requirement is imposed by section 232-a of the Real Property Law. The language of the statute itself is clear. All that the notice must inform tenant of is that landlord elects to terminate the tenancy and that refusal to vacate will lead to summary proceedings. While tenant cites one case which required specification of grounds in the 30-day notice (Colavolpe v Williams, 77 Misc 2d 430), that decision, in our opinion, runs counter to the clear language of section 232-a. There was thus no defect in the termination notice served by landlord in the instant case.
PROPRIETY OF LANDLORD’S HOLDOVER PROCEEDING
The contention that the expiration of his three-year lease transformed tenant into a month-to-month tenant is the pivot on which landlord’s holdover proceeding turns. From that first premise landlord argues that the *322 antieviction protections of the rent stabilization regulations were vitiated, and the right to terminate tenant’s month-to-month tenancy re-established, when the latter failed to pay the required rent.
We disagree. In our view tenant’s occupancy after the running of the three-year lease was not that of a month-to-month tenant. Rather, tenant continued in possession as a statutory permanent tenant, a status conceptually incompatible with that of the month-to-month tenant’s. Landlord’s holdover proceeding, founded as it is on the flouted 30-day notice which attempted to terminate a nonexistent month-to-month tenancy, was therefore properly regarded as a nullity by the lower court.
Under the common law, when a tenant of a lease for a term of years maintained his possession past the end of the term, the landlord’s acceptance of rent resulted in a periodic year-to-year tenancy, terminable upon proper notice to either party (Walsh, Property [2d ed], §§ 156, 157, pp 249-255; Casner, 1 American Law of Property, § 3.33) . The common-law rule in New York has been modified to the extent that presently only a month-to-month periodic tenancy springs forth from the combination of tenant holdover and landlord acceptance of rent (see Real Property Law, § 232-c). Section 232-a of the Real Property Law requires that to terminate a monthly periodic tenancy, 30 days’ notice to the tenant must be provided.
The legal theory underlying the notion of a periodic tenancy is that of an implied agreement. The holdover tenant is viewed as proffering, through his tender of rent, an option to the landlord to continue the tenancy upon the same terms (except as to duration) as the just expired lease (see Casner, 1 American Law of Property, § 3.33) . The landlord is free to accept or reject the option tendered by the tenant. If the elements of offer and acceptance express or implied are absent, no contract exists. (Stern v Equitable Trust Co. of N. Y., 238 NY 267.)
Under no view, however, can a lessee who remains in possession at the end of his lease by virtue of the rent stabilization laws be regarded as a periodic tenant. A *323 legion of cases have restated the fundamental proposition first enunciated in Stern v Equitable Trust Co. of N. Y. (supra, pp 269-270): “[In] suspending possessory remedies [of] the lease, [the rent] laws extended, against the will of the landlord, the right of the tenant to remain in possession of [property.] *** The tenant thus remains in possession, not by virtue of [an] agreement, express or implied *** but by virtue of the compulsion *** the law exerts on the landlord to allow him to remain *** The tenant does not offer to remain in possession *** He insists upon doing so. The landlord does not accept [the] proposition. The law forces it upon him *** [T]he tenant stands on his statutory rights which become the measure of his term and of his liability.” See, also, Whitmarsh v Farnell (298 NY 336); 1239 Madison Ave. Corp. v Neuburger (208 App Div 87); Lewittes & Sons v Spielmann (190 Misc 35); Oyola v Combo Creditors (64 Misc 2d 727), all of which explicitly hold that upon conclusion of the lease a statutory tenant is not a month-to-month lessee. Dicta, perhaps to the contrary, in Trustees of Columbia Univ. in City of N. Y. v Levin (71 Misc 2d 356), we consider unpersuasive and opposed by the overwhelming weight of authority.
The foregoing decisions raze the underpinnings of the instant holdover proceeding. They demonstrate that tenant was not a month-to-month tenant. The 30-day notice was, consequently, an ineffectual predicate on which to base a claim that tenant was overstaying his term. The court below reached the right result in holding that the landlord’s special proceeding premised on the expiration of a periodic tenancy should be dismissed.
We believe, moreover, that the policies underlying passage of the rent stabilization laws are generally better served by holding out to the tenant the opportunity usually afforded in a nonpayment proceeding to cure the breach of his rent obligations. In People ex rel. Durham Realty Corp. v La Fetra (230 NY 429) the Court of Appeals noted that the design of the emergency rent laws was to prevent unjust evictions by landlords eager to squeeze the highest possible rent out of housing-hungry tenants. That legislative policy is also set forth in the *324 rent stabilization laws. (See Administrative Code of City of New York, § YY55-1.0 [citing unreasonable rental agreements and unjust and oppressive rents as reason for controlling rents].)
Rent, then, was viewed as the most sensitive element of the landlord-tenant relationship and the one that could most easily be turned into a weapon of abuse. It seems to us to be more in harmony with the legislative intent of the Rent Stabilization Law to afford the stabilized tenant the opportunity to cure a rent default which often may be the result of an oversight easily remedied.
Concur: Tierney, J. P., Riccobono and Asch, JJ.