OPINION OF THE COURT
Memorandum.
Ordered that the final judgment is reversed, without costs, and the matter is remitted to the Justice Court for the entry of a final judgment dismissing the petition.
Landlord commenced this residential holdover proceeding after terminating tenant’s lease pursuant to a provision therein which purports to allow landlord to terminate the lease based upon a default in rent. Tenant’s defense at trial was that landlord had breached the warranty of habitability by virtue of, among other things, an unresolved mouse infestation and contaminated water. Following the nonjury trial, the Justice Court, ruling that the conditions complained of were not extreme enough to constitute a defense to the proceeding, awarded landlord possession and the sum of $18,256.24. We reverse.
The issue presented is whether, in a residential holdover proceeding that is based on a provision in a lease that purports to allow the landlord to terminate the lease on the ground of nonpayment of rent, a landlord may be awarded a final judgment where the tenant establishes that there has been a breach of the warranty of habitability. We hold that a landlord may not be awarded a final judgment in those circumstances.
There is authority to the effect that the proper remedy for a default by a residential tenant in the payment of rent is a nonpayment proceeding, not a holdover proceeding. As one treatise formulates the rule, “a conditional limitation providing for *65 [the] forfeiture of the tenancy upon the nonpayment of rent is void as against public policy since it deprives the tenant of [his] right to interpose [a] breach of warranty of habitability claim” (Daniel Finkelstein & Lucas A. Ferrara, Landlord and Tenant Practice in New York § 10:122 at 713 [West’s NY Prac Series, vol F, 2012]; see 205 W. End Ave. Owners Corp. v Adler, NYLJ, Nov. 2, 1990 at 21, col 4 [App Term, 1st Dept]). Other cases have invoked a public policy rationale for the rule, based on the fact that there are cure opportunities available in nonpayment proceedings that are not available in holdover proceedings (see 61 E. 72nd St. Corp. v Zimberg, 161 AD2d 542 [1st Dept 1990] [in the case of a residential tenancy, a contractual provision which denies the right to cure is against public policy]; Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 323-324 [App Term, 1st Dept 1980] [“the policies underlying passage of the rent stabilization laws are generally better served by holding out to the tenant the opportunity usually afforded in a nonpayment proceeding to cure the breach of his rent obligations”], affd for reasons stated below 84 AD2d 700 [1981], affd on other grounds 56 NY2d 1025 [1982]).
However, in Goldcrest Realty Co. v 61 Bronx Riv. Rd. Owners, Inc. (83 AD3d 129, 134 [2011]), the Appellate Division, Second Department, rejected a claim that, in the residential context, a tenant may not waive the right to cure a rent default, stating that there is “no authority for the . . . contention that a conditional limitation in a proprietary lease providing for forfeiture of the tenancy upon the nonpayment of rent is void as against public policy.” The Court in Goldcrest did not limit its holding to proprietary leases, as it expressly rejected the rationale of the Appellate Term, First Department, in the Park Summit case, and the Park Summit case involved a rent-stabilized apartment, not a co-op apartment.
In Goldcrest, the litigation involved a claim by a cooperative corporation that a sponsor who held the unsold shares allocated to 15 apartments had failed to pay maintenance, and a claim by the sponsor that it had prepaid the maintenance. The warranty of habitability was not in issue there, nor could the sponsor, which did not reside in any of the apartments, have raised a warranty of habitability claim. Thus, while this court must follow Goldcrest (see Stadt v Durkin, 35 Misc 3d 128[A], 2012 NY Slip Op 50585[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2012]), for the reasons that follow, it is our view that Goldcrest does not apply in cases in which a residential tenant withholds rent because of a breach of the warranty of habitability.
*66 In contrast to the situation in Goldcrest, in which the Court found that no public policy interest was involved, when a warranty of habitability defense is established, there is a clear public policy interest involved. Subdivision (2) of Real Property Law § 235-b, the warranty of habitability statute, expressly states that “[a]ny agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy” (emphasis added). If effect is to be given to the language of this statute and to the public policy embodied therein, a residential tenant must be allowed to assert the warranty of habitability as a defense to any claim based on an alleged rent default, including in a holdover proceeding. Thus, in reconciling the apparent holding of Goldcrest, which rejected the rationale of Park Summit and found that there is no public policy voiding a conditional limitation in a proprietary lease providing for the forfeiture of a tenancy upon the nonpayment of rent, with the public policy expressed by the legislature in Real Property Law § 235-b, we conclude that a holdover proceeding may be maintained where the termination of a residential tenancy was based on an alleged rent default, but that public policy dictates that where the residential tenant establishes that there has been a breach of the warranty of habitability, the holdover proceeding must be dismissed. As, contrary to the ruling of the Justice Court, tenant here established the existence of a breach of the warranty of habitability, including a mouse infestation, which was not resolved, and contaminated water, the final judgment must be reversed and the petition dismissed.
Iannacci, J.P., Marano and Tolbert, JJ., concur.