1719 Gates LLC v Torres (2024 NY Slip Op 24249)

[*1]

1719 Gates LLC v Torres

2024 NY Slip Op 24249

Decided on September 23, 2024

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 23, 2024
Civil Court of the City of New York, Queens County

1719 Gates LLC, Petitioner,

against
Dianne Torres, et al., Respondents.

Index No. L&T 307806-24

Counsel for Petitioner:
Butnick & Levenson LLP

Logan J. Schiff, J.

INTRODUCTION
This summary holdover proceeding presents an opportunity for consideration of New York's recently enacted Good Cause Eviction Law (L 2024, ch 56, part HH) (hereinafter GCEL), the most comprehensive expansion of rent regulation in New York in half a century. While GCEL is certain to raise a host of novel legal issues, the narrow question here is whether a landlord subject to GCEL can decline to renew and effectively terminate a tenancy through the statutory mechanism of a holdover proceeding (RPAPL 711(1)) solely because the tenant owes rental arrears, or if their remedy remains limited to a nonpayment (RPAPL 711(2)). Unlike in a holdover, a nonpayment requires service of a good faith 14-day rent demand prior to filing and allows the tenant the option of avoiding eviction by paying the amount sought prior to commencement (RPAPL 711(2)), as well as before the initial hearing date (RPAPL 731(4)), or any time post-judgment by paying the full rent due prior to execution of the warrant of eviction (RPAPL 749(3)).
For the reasons stated below, after review of the statute and the overarching statutory framework, this court concludes that GCEL does not authorize a non-renewal holdover against a covered tenant based solely on their owing rental arrears. The appropriate remedy to enforce nonpayment in such circumstances remains limited to a nonpayment proceeding, the precise statutory mechanism fashioned by the legislature in RPAPL 711(2) with its more liberal cure provisions.
RELEVANT FACTUAL AND PROCEDURAL HISTORY
Petitioner 1719 Gates LLC filed the instant holdover against Dianne Torres and her undertenants on May 14, 2024, seeking possession of an apartment within a six-unit multiple [*2]dwelling in Queens, New York (see NYSCEF 1 and 2). The basis of the proceeding is the expiration and non-renewal of Respondent's lease expiring March 31, 2024, following service of a 90-day notice of termination and non-renewal pursuant to Real Property Law (RPL) 226-c and 232-a dated January 25, 2024, with an effective termination date of April 30, 2024 (see NYSCEF 1 at 6). The Petition pleads the building is exempt from rent-stabilization by virtue of its construction after 1974 and/or substantial rehabilitation (Petition, NYSCEF 1, ¶ 7). The Petition further alleges that "[g]rounds for Non-Renewal exist, pursuant to RPL 216(1)(a)(i) in that the tenant has failed to pay rent due and owing for rent that came due prior to the enactment of the 'Good Cause' Eviction Law." (id. at ¶ 8).
The Respondents have never appeared, and as a result the court conducted an inquest on September 11, 2024. Petitioner's property manager Shaye Falkowitz testified, and the court admitted into evidence a certified deed, certified multiple dwelling registration, certified rent registration history listing the subject apartment as exempt due to substantial rehabilitation by filing dated July 27, 2015, a non-regulated lease renewal with Respondent for the period of April 1, 2024, through March 31, 2024, for $4,100 per month, and a rent ledger reflecting $29,890 in outstanding rental arrears and use and occupancy owed through September 2024, the bulk of which are post-termination arrears for the months of April 2024 through September 2024. Mr. Falkowitz testified that he authorized service of the 90-day non-renewal and termination notice, that Respondent moved into the premises in 2021, that the last lease was never extended after it expired, and that no rent was accepted after the lease expired. The court allowed Mr. Falkowitz to submit a supplemental affidavit of facts dated September 18, 2024 (NYSCEF 5), wherein he states that the building was vacant in 2014-2015 when it was gut renovated, that over 75% of the building-wide systems were replaced, and that this work did not require a new certificate of occupancy as a "Type 2 Alteration."
DISCUSSION
The Good Cause Eviction Law (GCEL), signed on April 20, 2024, and effective immediately (L 2024, ch 56, part HH, § 7), is primarily codified in Article 6-A of the RPL. While GCEL did not achieve the nearly universal rent regulation sought by its chief proponents, it nonetheless dramatically alters the residential rental housing landscape in New York City for covered dwellings, which includes most residential housing accommodations built before 2009 where the landlord owns, either directly or indirectly, more than ten units of housing within New York State (RPL 211(3)(a); RPL 214(1)-(2)).[FN1]

Tenants in housing accommodations subject to GCEL are entitled to two principal benefits that unregulated tenants are not. First, allowable annual rental increases are tied to an inflation index and generally capped at no more than 10% (RPL 211(7); 216(a)(1); RPL 231-c; RPAPL 711(2)). Second, and most relevant to the instant proceeding, a tenant covered by GCEL can no longer be evicted in a "no grounds" holdover based on the landlord's mere election not to [*3]renew the lease. Rather, tenants covered by GCEL can only be removed from possession based on one of the "good cause" grounds enumerated in RPL 216(1)(a) - (j) "upon order of a court of competent jurisdiction entered in an appropriate judicial action or proceeding" (RPL 216(1)).
The first ground for removal in RPL 216(1), and the basis of this proceeding is that "[t]he tenant has failed to pay rent due and owing, provided however that the rent due and owing, or any part thereof, did not result from a rent increase which is unreasonable" (RPL 216(1)(a)(1)). Other grounds include where the tenant breached a substantial violation of their tenancy, so long as the landlord has first served a ten-day notice to cure (RPL 216(b)), or where the tenant is committing or permitting a nuisance, which does not require a notice to cure (RPL 216(c)). Another ground is a tenant's failure to sign a renewal lease, so long as the offer was timely made within 30-90 days prior to lease expiration and does not seek an unreasonable increase as defined by statute (RPL 216(j)).
In the instant matter, Petitioner concedes the premises are a covered dwelling under GCEL, and that it was required to demonstrate a good cause ground for eviction in that the Petition was commenced after the April 20, 2024, the effective date of the statute.[FN2]
Petitioner argues it was entitled to decline to renew Respondent's tenancy and to commence a summary holdover eviction proceeding, rather than simply file a nonpayment proceeding, because Respondent defaulted on her obligation to pay rent due under the last lease, a basis for removal under the statute (RPL 216(1)(a)(1)). According to the rent ledger admitted into evidence at inquest, Respondent was in rental arrears for approximately three months of rent due under the lease expiring on March 31, 2024, at the time this proceeding was filed on May 14, 2024, as well as for use and occupancy for the period of April 2024 through September 2024, after the lease expired and Petitioner declined to renew, as of the date of inquest on September 11, 2024.
While it certainly would have been within the legislature's power to do so, GCEL did not create new causes of action for summary eviction proceedings in housing court. Instead, the statute merely imposes additional conditions for removal of covered tenants based on the grounds listed in RPL 216. The grounds for a summary eviction proceeding against a tenant still lie exclusively within RPAPL 711. This includes a nonpayment under RPAPL 711(2) or a holdover pursuant to RPAPL 711(1) following either the early termination of the agreement, or the expiration and non-renewal of the tenancy.
Nonpayments and holdovers have significant differences and prerequisites. A nonpayment presumes the existence of an ongoing landlord-tenant relationship and requires a 14-day good faith rent demand prior to commencement where the tenant has the option to cure [*4]the default and pay the alleged arrears to avoid coming to court (see Greenport Preserv., L.P. v Heyward, [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]). In contrast, a holdover is only viable where the tenancy has been terminated before commencement and the landlord-tenant relationship remains severed (see Nyack Plaza v Parker, 18 Misc 3d 126[A] [App Term, 2d Dept, 9th & 10th Jud Dists 2007]). A holdover may be premised on the tenant's holding over after the expiration of the natural term in the last agreement following a non-renewal notice — prior to the enactment of GCEL this was often colloquially called a "no grounds" holdover (see RPAPL 711(1); RPL 226-c; RPL 232-a; Federation of Orgs. For the NY State Mentally Disabled, Inc. v Lindsay, 80 Misc 3d 131[A] [App Term, 1st Dept 2023]; Frischer v Goldner, 2022 NY Slip Op 51060 [Civ Ct, Kings Co 2022]]) — or "by reason of the [early] termination of the term fixed in the lease pursuant to a [conditional limitation] provision contained therein . . . " (RPAPL 711(1)), often referred to as a "for cause" holdover (see Fourth Hous. Co., Inc. v Bowers, 53 Misc 3d 43 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016]). In a for cause holdover based on a tenant's breach, the tenant is generally afforded a 30-day post-judgment opportunity to cure non-objectionable conduct (RPAPL 753(3) and (4)). There is no right to a post-judgment cure in a no cause non-renewal holdover, at least in cases predating GCEL (see Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 321 [App Term, 1st Dept 1980], affd 84 AD2d 700 [1981], affd on other grounds 56 NY2d 1025 [1982]).
With respect to the grounds for removal of a GCEL-protected tenant enumerated in RPL 216, the statute does not specify the appropriate mechanism for removal in a summary proceeding, i.e. it does not state which grounds should be filed as a nonpayment under RPAPL 711(2), an end of natural term holdover after service of a non-renewal notice in the time frame required by law (RPAPL 711(1); RPL 226-c; RPL 232-a), or a more expedited for cause termination of tenancy upon service of a notice fixing an early termination date (RPAPL 711(1)). Rather, RPL 216 merely states that at least one of the enumerated good cause grounds must be established in a court of competent jurisdiction before removal, to wit:
Grounds for removal of tenants. 1. No landlord shall remove a tenant from any housing accommodation covered by section two hundred fourteen of this article, or attempt such removal or exclusion from possession, notwithstanding that the tenant has no written lease or that the lease or other rental agreement has expired or otherwise terminated, except upon order of a court of competent jurisdiction entered in an appropriate judicial action or proceeding in which the petitioner or plaintiff has established one of the following grounds as good cause for removal or eviction
RPL § 216(1) (emphasis added).
Certainly it appears the legislature envisioned that the "appropriate judicial action or proceeding" would in some instances include a non-renewal holdover after expiration of the tenant's natural term inasmuch as the legislature amended RPL 226-c, the statute providing the required time frame for a non-renewal of tenancy notice, to state that such notices must specify if the apartment is subject to good cause (L 2024, ch 56, part HH, § 2). However, it is by no means evident from the plain language of the statute that the legislature believed a non-renewal holdover, which requires 90 days' notice of non-renewal for tenancies of over two years duration, was the necessary or appropriate means of effectuating an eviction for every good cause ground within RPL 216. For instance, the statute authorizes removal for nuisance (RPL 216(1)(c)), a cause of action so urgent that it does not require a 10-day notice to cure, which the court presumes the legislature did not conceptualize would normally be filed as a non-renewal [*5]case.
With respect to removal of a GCEL-tenant based on nonpayment, the first ground listed in the statute for removal, it is only authorized where:
The tenant has failed to pay rent due and owing, provided however that the rent due and owing, or any part thereof, did not result from a rent increase which is unreasonable . . .
RPL 216(1)(a)(1). The statute does not state that a non-renewal holdover is the appropriate means of removal for nonpayment, nor is there any indication that the legislature sought to act in derogation of RPAPL 711(2)'s longstanding mechanism for enforcing a default in the obligation to pay rent. It is equally plausible that in listing nonpayment as the first ground for removal, the legislature was merely reiterating the fundamental principle that a tenant may be removed from possession if they fail to pay the rent due, even if they are protected by GCEL. In doing so the legislature provided that such proceeding cannot be based on an unreasonable rental increase, effectively codifying a rent overcharge defense to a nonpayment.[FN3]

To the extent the plain language of RPL 216(1)(a)(1) is ambiguous, it is a fundamental principle of statutory interpretation that "when the statutory language at issue is but one component in a larger statutory scheme, it must be analyzed in context and in a manner that harmonizes the related provisions and renders them compatible" (Matter of Mestecky v City of New York, 30 NY3d 239, 243 [2017] [internal quotations and citations omitted]). In the case of GCEL, the statute exists within a broader landlord-tenant framework that includes Article 7 of the RPAPL and Article 7 of the Real Property Law (RPL). One significant provision of the RPL is 235-b, the statutory warranty of habitability, which obligates a landlord to maintain the leased premises in good repair and free of any "conditions which would be dangerous, hazardous or detrimental to their life, health or safety." In vindicating the rights afforded by RPL 235-b, a tenant's primary "means of persuading the landlord to maintain habitable premises" is through withholding rent and forcing the landlord to bring a nonpayment (Ruppert House Co. Inc. v Altmann, 485 NYS 2d 472 [Civ Ct, NY Co 1985] [Saxe, J.]). This right is impaired when a landlord can simply terminate the tenancy any time there are rental arrears, rather than file a nonpayment with its more generous cure provisions and the ability to litigate warranty of habitability defenses. For this reason, some courts have held that lease provisions allowing for early termination based on nonpayment are void where the tenant can show a viable warranty of habitability defense, since termination in such circumstances is inconsistent "with the public policy [rationale] expressed by the legislature in Real Property Law § 235-b" (Windy Acres Farm, Inc. v Penepent, 40 Misc 3d 63 [App Term, 2d Dept, 9th & 10th Jud Dists, 2013] [internal [*6]citation and quotation omitted])[FN4]
. By a similar token, allowing a non-renewal holdover, the functional equivalent of a for cause early termination holdover, against a rent-regulated GCEL-tenant solely because they owe rent would chill their ability under RPL 235-b to withhold based on serious health and safety conditions for fear of termination, especially given that a warranty of habitability defense is generally not a cognizable defense to a non-renewal holdover (see Blumenthal v Chwast, 2003 NY Slip Op 50029[U] [App Term, 1st Dept 2003]). Insofar as RPL 216 and RPL 235-b exist within the same statutory framework, they should be interpreted in a manner that avoids such a fundamental conflict, which is best accomplished by a blanket rule rejecting the viability of such proceedings.
Limiting the removal of a GCEL-tenant based solely on outstanding rental arrears to a nonpayment proceeding is also more consistent with the statutory scheme embodied within the RPAPL, which sets forth the governing procedures for summary proceedings. This includes the requirement to serve a 14-day rent demand before commencement of a nonpayment providing a good-faith approximation of the amount owed for the relevant period in dispute (see RPAPL 711(2); Shoprite Supermarkets v Yonkers Plaza Shopp, 29 AD3d 564 [2d Dept 2006]). Besides allowing for the early preparation of defenses, the rent demand affords the tenant the possibility of avoiding eviction altogether and the stresses associated with traveling to housing court by promptly paying the rent sought, an option that is not available in a non-renewal holdover. Even after commencement, tenants in nonpayment proceedings can pay the arrears prior to the first court date to render the proceeding moot (RPAPL 731(4)) or pay the full rent due at any time post-judgment to avoid eviction (RPAPL 749(3)). Affording GCEL-covered tenants the benefits of these more liberal cure provisions, specifically envisioned by the legislature as warranted in connection with nonpayment proceedings, more effectively effectuates the longstanding legislative preference against avoiding the needless forfeiture of rent-regulated tenancies, which should now include GCEL-tenants (see Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 324 [App Term, 1st Dept 1980], affd 84 AD2d 700 [1981], affd on other grounds 56 NY2d 1025 [1982] [Concluding in the analogous rent-stabilization context that a nonpayment rather than a holdover based on rental arrears is "more in harmony with the legislative intent of the Rent Stabilization Law to afford the stabilized tenant the opportunity to cure a rent default which [*7]often may be the result of an oversight easily remedied.").[FN5]

CONCLUSION
In sum, in order to best harmonize the grounds for removal in GCEL with the overarching statutory framework for summary evictions proceedings embodied within RPAPL 711, 731 and 749, and statutory right of a tenant to withhold based on a landlord's breach of the warranty of habitability as codified in RPL 235-b, and in the absence of an unequivocal statement from the legislature that they intended to deviate from the traditional procedure for eviction based on nonpayment, the summary remedy for enforcing a routine failure to pay rent against a GCEL-tenant must remain via a nonpayment proceeding, not a non-renewal holdover.
In reaching this conclusion the court is not suggesting that there are never circumstances where termination of a GCEL-protected tenancy may be appropriate based on a persistent refusal to pay rent. In the analogous context of rent-stabilized housing, the courts have determined that a chronic rental delinquency constitutes a substantial breach of the implied terms and obligations of the tenancy sufficient to warrant a forfeiture (see, e.g., Adam's Tower Ltd. Partnership v Richter, 186 Misc 2d 620, 621-622 [App Term, 1st Dept 2000]). A GCEL ground for eviction based on substantial breach may offer a similar pathway for redress (RPL 216(1)(b)). However, such proceedings normally require pleading and demonstrating not merely a default in payment but a "history of repeated nonpayment proceedings brought to collect chronically late rental payments" (31-67 Astoria Corp. v Cabezas, 55 Misc 3d 132[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]), which Petitioner did not allege or establish here, as it merely demonstrated there was a default in payment for three months of rent due under Respondent's then-in-effect lease before it elected to not renew.[FN6]

Accordingly, for the foregoing reasons, Petitioner has failed to state a cause of action for eviction in this non-renewal holdover subject to GCEL based solely on the nonpayment of rent. Petitioner's request for a judgment after inquest is denied, and the Petition is dismissed without prejudice pursuant to CPLR 409(b). This is the decision and order of the court.
Dated: September 23, 2024
Queens, New York
HON. LOGAN J. SCHIFF, J.H.C.

Footnotes

Footnote 1:Good Cause Eviction was first sponsored by Senator Julia Salazar in 2019 via 2019-S2892B, and again in 2021-S3082, and 2023-S305, all of which failed to gain sufficient legislative and gubernatorial approval. These earlier versions of the statute would have encompassed far more housing. For instance, S305 applies good cause protections to virtually all residential housing other than owner-occupied homes with fewer than four units.

Footnote 2:While certain notice requirements within the statute, including those relating to non-renewal, did not go into effect until August 18, 2024, GCEL is otherwise applicable to any cases commenced on or after the statute's effective date of April 20, 2024, and requires a covered landlord to plead and demonstrate a good cause ground for eviction (L 2024, ch 56, part HH, § 7). In the Second Department, "commencement" is context specific and can be keyed to the filing or service of the initiating papers (see 92 Bergenbrooklyn, LLC v Cisarano, 50 Misc 3d 21 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). While at least one court has held that commencement for purposes of GCEL is tied to the date of service (see Doc Realty Mgt. Inc. v Morales, 2024 NY Slip Op 24239 [Civ Ct, Queens Co 2024]), this court need not reach that issue here as the Petition was filed and served after April 20, 2024.

Footnote 3:As GCEL was passed as part of broader 2024 budget bill, it lacks a sponsor's memorandum or other introductory statements of legislative intent that might normally aid in interpreting the statute. To the extent the statute draws heavily on earlier versions of the Good Cause statute sponsored by Senator Salazar, it is worth noting that these proposed bills include a statement of intent expressing a broad desire to limit non-renewal evictions wherever possible. For instance, the legislative justification for 2023-S305 states: "Landlords across the state displace tenants in order to gain higher profits. The de facto evictions happen, among other ways, via non-renewal of their leases. These non-renewals displace individuals and families in order for owners to rent out their units to higher income tenants."

Footnote 4:In discussing countervailing authorities, the Appellate Term in Windy Acres noted that the Appellate Division in the Second Department previously held that a conditional limitation provision allowing for early termination was enforceable in a private cooperative in Goldberg Realty Co. v 61 Bronx Riv. Rd. Owners, Inc., 83 AD3d 129 [2011], whereas in the rent-stabilized context the Appellate Term in the First Department imposed a blanket rule that a holdover does not lie for mere nonpayment of rent (see Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 324 [App Term, 1st Dept 1980], affd 84 AD2d 700 [1981], affd on other grounds 56 NY2d 1025 [1982]). In this court's view, the rent-stabilized context is more apropos to the matter at hand inasmuch as a GCEL-protected tenancy is a new form of government-regulated tenancy in which the legislature's has expressed its desire to protect such tenants from displacement and eviction, as opposed to that of a shareholder in a cooperative where "relationships among shareholders . . . are sufficiently distinct from the traditional landlord-tenant relationships . . . " (40 W. 67th St. Corp, v Pullman , 100NY2d 147, 155 [2003]).

Footnote 5:There is considerable debate as to whether a nonpayment may be maintained where a non-rent-stabilized tenant remains in possession following expiration of their lease pursuant to a month-to-month tenancy or other oral agreement (compare Krantz & Phillips, LLP v Sedaghati, 2003 NY Slip Op 50032[U] [App Term, 1st Dept 2003] with Tricarichi v Moran, 959 NYS2d 372 [App Term, 2d Dept, 9th & 10th Jud Dists 2012]). Even assuming, arguendo, that a nonpayment would not always lie against a month-to-month tenant covered by GCEL, the landlord would not be without remedy as the statute provides a ground for eviction based on the failure to sign a renewal lease (RPL 216(1)(j)). Furthermore, here the alleged default in payment of rent occurred pursuant to a lease that was still in effect when Petitioner declined to renew and opted to pursue a holdover rather than the available remedy of a nonpayment.

Footnote 6:There is authority for the proposition in the rent-stabilized context that a chronic rental delinquency holdover, where established through competent evidence, is incapable of any meaningful cure and therefore does not require a notice to cure even where otherwise required by statute (see, e.g., Herald Towers, LLC v Perry, 2003 NY Slip Op 50564[U] [App Term, 1st Dept 2003]).