1719 Gates LLC v Torres (2024 NY Slip Op 24282)

[*1]

1719 Gates LLC v Torres

2024 NY Slip Op 24282

Decided on November 6, 2024

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 6, 2024
Civil Court of the City of New York, Queens County

1719 Gates LLC, Petitioner,

against
Dianne Torres, et al., Respondents.

Index No. L&T 307806-24

Counsel for Petitioner:
Butnick & Levenson LLP
Logan J. Schiff, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of Petitioner's motion seeking, in effect, to vacate or modify the court's September 23, 2024, decision and order after inquest dismissing the proceeding (NYSCEF 6), and to vacate the judgment of dismissal entered thereby (NYSCEF 13): NYSCEF 1-13.
Upon the foregoing cited papers, the Decision/Order on Petitioner's motion is as follows:
RELEVANT PROCEDURAL HISTORY AND BACKGROUND
Petitioner 1719 Gates LLC commenced the instant nonrenewal holdover against Dianne Torres and her undertenants upon filing on May 14, 2024, seeking possession of an apartment within a six-unit multiple dwelling in Queens, New York. The Petition pleads the subject apartment is exempt from the New York City Rent Stabilization Law by virtue of its substantial rehabilitation after January 1, 1974. 
Prior to commencement, Petitioner served a 90-day notice of termination and non-renewal pursuant to Real Property Law (RPL) 226-c -a dated January 25, 2024, with an effective termination date of April 30, 2024, in which it declined to renew Respondent's written lease expiring March 31, 2024. At the time the notice was served, a landlord could elect to not renew a tenancy in an unregulated apartment upon lease expiration for any non-retaliatory reason, the basis of which need not be explicated in the petition or proven at trial. In such a proceeding, often colloquially termed a "no grounds holdover" a tenant would generally have minimal defenses or recourse apart from seeking time to move, regardless of the duration of the tenancy or other equities.
After Petitioner's nonrenewal notice was served but prior to commencement of this proceeding the legislature enacted the Good Cause Eviction Law (GCEL) on April 20, 2024 (L 2024, ch 56, part HH), the most comprehensive expansion of rent regulation in New York in half a century. Primarily codified in the newly enacted Article 6-A of the RPL, GCEL offers significant new eviction protections to tenants in covered dwellings, including most residential housing accommodations built before 2009 where the landlord owns, either directly or [*2]indirectly, more than ten units of housing within New York State (see RPL 211(3)(a); RPL 214(1)-(2)). A GCEL-protected tenant can no longer be evicted in a no grounds holdover and can only be removed from possession based on one of the Good Cause grounds enumerated in RPL 216(1)(a) - (j) "upon order of a court of competent jurisdiction entered in an appropriate judicial action or proceeding" (RPL 216(1)).[FN1]
One of the Good Cause grounds is that "[t]he tenant has failed to pay rent due and owing, provided however that the rent due and owing, or any part thereof, did not result from a rent increase which is unreasonable" (RPL 216(1)(a)(1)).
Here, Petitioner concedes that the subject premises are a covered dwelling under GCEL, and that it must demonstrate a Good Cause basis for removal of Respondent. To this end, the Petition pleads that "[g]rounds for Non-Renewal exist, pursuant to RPL 216(1)(a)(i) in that the tenant has failed to pay rent due and owing for rent that came due prior to the enactment of the 'Good Cause' Eviction Law" (NYSCEF 1 at ¶ 8).
Following the non-appearance of all Respondents, an inquest was conducted on September 11, 2024, during which the court admitted into evidence a non-regulated lease renewal between the parties for the period of April 1, 2024, through March 31, 2024, for $4,100 per month, and a rent ledger reflecting $29,890 in outstanding rental arrears, encompassing three months of rent due under the now expired lease, and use and occupancy from April 2024 through September 2024.
After the inquest, this court issued a decision and order dated September 23, 2024, published at 1719 Gates LLC v Torres, 2024 NY Slip Op 24249 [Civ Ct, Queens Co 2024] that dismissed the proceeding, holding that Petitioner failed to plead a viable cause of action for removal of Respondent in a holdover proceeding based solely on the nonpayment of three months of rent due under the parties' last rental agreement. This decision was predicated on the court's conclusion that the language of GCEL is ambiguous as to whether the Good Cause ground for removal of a tenant based on nonpayment of rent enumerated in RPL 216(1)(a)(1) should be enforced via a holdover or a nonpayment proceeding. Based on this purported ambiguity, the decision held as follows:
In sum, in order to best harmonize the grounds for removal in GCEL with the overarching statutory framework for summary evictions proceedings embodied within RPAPL 711, 731 and 749, and statutory right of a tenant to withhold based on a landlord's breach of the warranty of habitability as codified in RPL 235-b, and in the absence of an unequivocal statement from the legislature that they intended to deviate from the traditional procedure for eviction based on nonpayment, the summary remedy for enforcing a routine failure to pay rent against a GCEL-tenant must remain via a nonpayment proceeding, not a non-renewal holdover.
NYSCEF 6 at 11.
Petitioner now moves, in effect, to set aside or modify the decision and order after inquest, to vacate the judgment of dismissal entered thereby, and upon modification, for entry of [*3]a final judgment of possession. Petitioner argues modification is warranted because, contrary to the court's holding, the plain language of GCEL unambiguously contemplates a nonrenewal holdover for nonpayment of rent, including by reference to such types of proceedings in RPL 216(3), and that as a result the court erred in engaging in a policy-oriented analysis to determine if such a proceeding is the "appropriate judicial action or proceeding" (RPL 216(1)). The court held oral argument on Petitioner's motion on October 30, 2024, and reserved decision.
DISCUSSION
As an initial matter, Petitioner's motion is improperly denominated as seeking reargument of the September 23, 2024, decision and order after inquest. CPLR 2221 only authorizes reargument of a "prior motion" (see CPLR 2221(a)) and is not the proper vehicle for vacating a judgment entered after a hearing (see Mid Is., L.P. v Kripalani, 44 Misc 3d 38 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014]). Notwithstanding this technical infirmity, in the absence of prejudice, Petitioner's motion is hereby construed as seeking vacatur or modification of the decision and order after inquest and vacatur of the resulting judgment of dismissal, as "[i]t does not matter how a motion is titled by an attorney . . . what matters is what the motion actually is in substance" (Citibank, N.A. v Kerszko, 203 AD3d 42 [2d Dept 2022]; see also CPLR 2001). Modification or vacatur of an order is appropriate where the court has overlooked or misapprehended matters of fact or law (see Lurie v Lurie, 226 AD3d 1001 [2d Dept 2024]; Mid Is., L.P. v Kripalani, 44 Misc 3d at 40).
The crux of Petitioner's argument is that the court disregarded the plain language of GCEL in concluding that it does not authorize a nonrenewal holdover after expiration of a tenant's natural term under RPAPL 711(1) based solely on the nonpayment of rent. According to Petitioner, the statute unequivocally contemplates a nonrenewal holdover stemming from a tenant's failure to pay rent owed by specifically referencing the right to a post-judgment cure in a "holdover proceeding, the underlying basis of which is the nonpayment of rent" (RPL 216(3)). Petitioner further notes that one of the authorized grounds for eviction of a GCEL-covered tenant is based on the failure to pay rent (RPL 216(1)(a)(1)), without any restriction on the form such proceeding may take, and RPL 226-c, the relevant statute authorizing a nonrenewal notice at the expiration of a tenant's natural term, was amended by GCEL to require a landlord to state if the unit is subject to the "Good Cause Eviction Law," further evidence that the legislature envisioned a nonrenewal holdover was one such appropriate proceeding.
In matters of statutory interpretation, the "primary consideration 'is to ascertain and give effect to the intention of the Legislature'" (Matter of DaimlerChrysler Corp. v. Spitzer, 7 NY3d 653, 660 [2006], quoting Riley v. County of Broome, 95 NY2d 455, 463 [2000]). Towards this end, "[t]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of Mestecky v City of New York, 30 NY3d 239, 243 [2017] [internal citation and quotation omitted]).
Here, in holding that Petitioner failed to state a cause of action, the court noted at the outset that GCEL does not create new causes of action for the removal of a tenant in a summary eviction proceeding, which remain limited to a holdover after expiration of a tenant's term (RPAPL 711(1)) or a nonpayment proceeding for possession based on the default in payment of rent (RPAPL 711(2)). Instead, GCEL provides that a landlord can dispossess a covered tenant only "upon order of a court of competent jurisdiction entered in an appropriate judicial action or proceeding in which the petitioner or plaintiff has established one of the following grounds [enumerated in RPL 216] as good cause for removal or eviction" (RPL 216(1)) (emphasis [*4]added).
Unquestionably, a GCEL-covered tenant can be evicted for nonpayment of rent, as the first ground for removal listed in RPL 216 is that the "[t]enant has failed to pay rent due and owing . . . " (RPL 216(1)(a)(1)). However, because, at least in its view at the time, neither RPL 216 nor any other provision of GCEL specified that a holdover rather than a nonpayment was the "appropriate judicial action or proceeding" this court determined that it was necessary to consider what type of proceeding would best harmonize other relevant provisions within the overarching landlord-tenant statutory framework. This includes statutory remedies normally only available in a nonpayment proceeding, such as the right to a 14-day good faith rent demand that itemizes the amount due and owing and gives the tenant the option to pay the and avoid litigation (RPAPL 711), the right to pay the amount demanded in the petition prior to the initial court hearing (RPAPL 731(4)), the option to pay the full rent due post-judgment at any time prior to execution of the warrant (RPAPL 749(3)), and a tenant's fundamental right to withhold rent based on a landlord's breach of the statutory warranty of habitability as codified in RPL 235-b, which could be chilled if a tenant was forced to defend a nonrenewal holdover for nonpayment of rent in which the viability of such defense is uncertain. As a result, the court held that "the summary remedy for enforcing a routine failure to pay rent against a GCEL-tenant must remain via a nonpayment proceeding, not a non-renewal holdover" (NYSCEF 6 at 11).
Upon due deliberation, having considered the arguments in Petitioner's motion and re-reviewed the statute, the court concludes that, contrary to the reasoning in its initial decision, the plain language of GCEL reflects a legislative intent to authorize a nonrenewal holdover for nonpayment of rent. Two new statutory provisions enacted as part of GCEL are particularly instructive, including RPL 231-c, which obligates a landlord to append a Good Cause applicability notice to every lease offer and nonrenewal notice. In addition to stating whether the subject apartment is subject to Good Cause, the notice must enumerate the basis for non-renewal of a GCEL-protected tenant, including if "[t]he landlord is not renewing the lease because the tenant has failed to pay rent due and owing, and the rent due or owing, or any part thereof, did not result from a rent increase which is unreasonable" (RPL 231-c(1) at 4(E)). This statutory language, while not precisely stating that a nonrenewal holdover is the most appropriate proceeding to vindicate a GCEL-protected tenant's nonpayment of rent, at a minimum demonstrates that the legislature envisioned that a landlord could decline to renew a lease based on a tenant's failure to pay rent.
Second, and noted by Petitioner in its moving papers, in enumerating the permissible Good Cause grounds for removal in RPL 216, the statute concludes as follows:
Nothing in this section shall abrogate or limit the tenant's right pursuant to section seven hundred fifty-one of the real property actions and proceedings law to permanently stay the issuance or execution of a warrant or eviction in a summary proceeding, whether characterized as a nonpayment, objectionable tenancy, or holdover proceeding, the underlying basis of which is the nonpayment of rent, so long as the tenant complies with the procedural requirements of section seven hundred fifty-one of the real property actions and proceedings law [RPAPL 751] where applicable.
(RPL 216(3) (emphasis added)). RPAPL 751(1) "allows a tenant to stay the issuance of a warrant in a summary nonpayment proceeding by paying the amount owed into court prior to the issuance of a warrant" (Goldcrest Realty Co. v 61 Bronx Riv. Rd. Owners, Inc., 83 AD3d 129, 134 [2d Dept 2011]]) see also Everett D. Jennings Apts. L.P. v Hinds, 12 Misc 3d 139 [App [*5]Term, 2d Dept, 2d & 11th Jud Dists 2006]). This statute, which affords a pre-warrant issuance right to cure in proceedings relating to nonpayment that is distinct from the cure provisions applicable to breach of lease holdovers as codified in RPAPL 753(4) (see 205 West End Avenue Owners Corp. v Adler, 1990 NY Misc. LEXIS 786 [App Term, 1st Dept 1990]; Grand Liberte Coop., Inc. v Bilhaud, 126 Misc 2d 961 [App Term, 1st Dept 1984]), is mandatory within New York City and discretionary elsewhere.[FN2]

By explicitly stating in the grounds for removal in RPL 216(3) that a tenant has the right to cure his default in payment of rent prior to warrant issuance via RPAPL 751, a right normally limited to nonpayment proceedings, regardless of whether the matter was commenced "as a nonpayment, objectionable tenancy, or holdover proceeding, the underlying basis of which is the nonpayment of rent . . . " the legislature has evidenced its contemplation of a Good Cause nonrenewal holdover for nonpayment of rent. Such a proceeding is distinct from a nonpayment proceeding under 711(2) where a lease or other agreement remains active, or an early lease termination for breach of obligations of the tenancy, which was classified by the legislature as a holdover for "objectionable conduct" in RPL 216(3).
It is noteworthy that in clarifying that a default in payment of rent is curable regardless of whether the proceeding is brought as a nonpayment, nonrenewal holdover, or early termination holdover, the legislature has effectively created a new cause of action in the form of a nonpayment styled as a nonrenewal holdover for Good Cause. Unlike in a nonpayment proceeding under RPAPL 711(2), which requires an ongoing agreement to pay rent as of commencement (see Greenport Preserv., L.P. v Heyward, [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]; Fairfield Beach 9th, LLC v Shepard-Neely, 182 NYS3d 486 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]), a holdover is normally only viable where the rental agreement and tenancy have expired or terminated before commencement, and the landlord-tenant relationship remains severed (see Nyack Plaza v Parker, 18 Misc 3d 126[A] [App Term, 2d Dept, 9th & 10th Jud Dists 2007]). Furthermore, a nonrenewal holdover, which is based on the landlord's election rather than the tenant's breach, generally does not afford the tenant the option to cure (see Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 321 [App Term, 1st Dept 1980], affd 84 AD2d 700 [1981], affd on other grounds 56 NY2d 1025 [1982]). By allowing a nonrenewal holdover against a GCEL-covered tenant for nonpayment of rent, in the absence of an ongoing rental agreement and where the tenant retains the option to pay the arrears notwithstanding the landlord's election not to renew the tenancy, the legislature has turned the traditional nonpayment-holdover dichotomy on its head, at least as relates to GCEL-covered [*6]tenants.
In any event, because the statute unambiguously authorizes a nonrenewal holdover premised on a tenant's failure to pay rent, this court erred when it concluded that such a proceeding is not the "appropriate judicial action or proceeding" under the statute (RPAPL 216(1)). While a nonpayment proceeding may be the more economical mechanism for enforcing a default in payment of rent insofar as it requires a predicate good faith 14-day rent demand that properly itemizes the rent due and affords the tenant the opportunity to avoid litigation by satisfying the demand prior to commencement, it is not the role of the courts to override clear legislative enactments (see Ami v Ronen, 187 NYS3d 463 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2023], citing Chazon, LLC v Maugenset, 19 NY3d 410, 416 [2012]).[FN3]

Accordingly, Petitioner's motion is granted, and the court modifies its September 23, 2024, decision and order to delete the provision holding that Petitioner failed to state a cause of action for nonrenewal holdover under RPAPL 711(1) against a GCEL-covered tenant based on the nonpayment of rent. Upon modification, the judgment of dismissal entered on October 16, [*7]2024, is vacated (NYSCEF 13). The court's decision and order is further modified to award Petitioner a judgment of possession after inquest against all Respondents, as Petitioner proved its prima facie case by, among other things, demonstrating proper service of a 90-day nonrenewal notice and the Petition and Notice of Petition, the latter of which was served on Respondent personally (NYSCEF 4), the expiration of the parties' lease agreement on March 31, 2024, the existence of three months of rental arrears due under said lease totaling $12,300 as of nonrenewal, and which, along with use and occupancy coming due thereafter, resulted in cumulative rental arrears of $29,980 as of the September 11, 2024, inquest, and finally by demonstrating that the subject premises are exempt from the New York City Rent Stabilization Law by virtue of their substantial rehabilitation after January 1, 1974.[FN4]
In addition, because Respondent was personally served the court awards a separate money judgment in the amount of $29,980 as against Respondent Dianne Torres (see Avgush v Berrahu, 17 Misc 3d 85 [App Term, 2d Dept, 2d & 11th Jud Dists 2007]).
Because this proceeding is rooted in Respondent's breach of her obligation to pay rent due under the parties' rental agreement, a default the legislature has specifically stated is curable (see RPL 216(3), citing RPAPL 751(1)), issuance of the warrant is stayed ten days from service of this order for Respondent to cure her default in payment by satisfying the money judgment, in which case issuance of the warrant will be permanently stayed. Petitioner is to file and serve notice of entry of this decision on all Respondents within seven days by overnight mail or first class mail with a certificate of mailing. If service is effectuated by overnight mail, issuance of the warrant will be stayed an additional one day from service, and an additional five days if served by first class mail. Petitioner is further directed to submit a non-military service or dependency affidavit as to all Respondents upon warrant requisition. The earliest execution date is November 18, 2024.
In the event Respondent Torres is unable to cure her default prior to issuance of the warrant, she may seek a stay of execution of the warrant pursuant to RPAPL 749(3), which mandates vacatur of the warrant following a "judgment for non-payment of rent" upon "tender or deposit with the court of the full rent due at any time prior to its execution," provided that any such application must be supported by proof of payment of ongoing use and occupancy, which Petitioner may accept without prejudice to its judgment and warrant.
This constitutes the decision and order of the court.
Dated: November 6, 2024
Queens, New York
HON. LOGAN J. SCHIFF, J.H.C.

Footnotes

Footnote 1:The statute applies to all cases commenced on or after April 20, 2024 (see L 2024, ch 56, part HH, § 7; QN St. Albans Holdings LLC v Sands, 2024 NY Slip Op 24252 [Civ Ct, Queens Co 2024]), with the exception of several new notice requirements that did not go into effect until August 18, 2024, after commencement of this proceeding (see L 2024, ch 56, part HH, § 7(a)).

Footnote 2:The right to a post-judgment cure in a nonpayment proceeding before issuance of the warrant was of greater significance prior to the passage of the Housing Stability and Tenant Protection Act (HSTPA) on June 14, 2019, which amended RPAPL 749(3) to provide that issuance of the warrant no longer annuls the landlord tenant relationship, affords the courts broad authority to stay execution of the warrant, and requires vacatur of the warrant prior to execution upon payment of all rent due (L 2019, Ch 36, §19 (Part M)). Prior to the HSTPA, reinstatement of the landlord-tenant relationship following issuance of the warrant was discretionary and required a showing of good cause, even where the tenant was prepared to pay all rent owed (see Harvey 1390 LLC v Bodenheim, 96 AD3d 664 [1st Dept 2012]; Chelsea 19 Assoc. v James, 67 AD3d 601 [1st Dept 2009]).

Footnote 3:It is worth noting that one of this court's core concerns regarding allowing a nonrenewal holdover for nonpayment of rent — that it would impair a tenant's ability to raise a warranty of habitability defense, one of the most fundamental defenses available to a tenant to ensure their apartment is safe and sanitary (see Ruppert House Co. Inc. v Altmann, 485 NYS 2d 472 [Civ Ct, NY Co 1985] [Saxe, J.]) — was likely overstated. In the context of a no grounds lease expiration holdover in an unregulated apartment, the appellate courts have held that a landlord's breach of the statutory warranty of habitability does "not serve as [a] defense[] to recovery of possession" (Blumenthal v Chwast, 2003 NY Slip Op 50029[U] [App Term, 1st Dept 2003]; see also Matter of Kirkview Assoc. LP v Amrock, 160 AD3d 1108 [3d Dept 2018]). The logic underlying these holdings is that, because the law allows a landlord in a free-market apartment to elect not to renew and terminate a tenancy for any reason, the mere existence of health and safety conditions that might entitle the tenant to a rent abatement in a nonpayment proceeding have no bearing on the right to recover possession. Conversely, where a landlord seeks to terminate a tenancy prior to expiration of its natural term via a holdover based on the failure to pay rent, a tenant may assert as a defense the landlord's breach of the statutory warranty of habitability, a defense so fundamental that the legislature enacted Real Property Law 235-b, providing that: "Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy" (RPL 235-b; see also Hartman v 536/540 E. 5th St. Equities, Inc., 19 AD3d 240 [1st Dept 2005]; Runes v Douglas Elliman-Giobbons Ives, 83 AD2d 805 [1st Dept 1981]). Indeed, as the Appellate Term noted in Windy Acres: "If effect is to be given to the language of this statute [RPL 235-b] and to the public policy embodied therein, a residential tenant must be allowed to assert the warranty of habitability as a defense to any claim based on an alleged rent default, including in a holdover proceeding" (40 Misc 3d 63 [App Term, 2d Dept, 9th & 10th Jud Dists, 2013]). The Windy Acres rationale presumably encompasses a nonrenewal holdover based on the failure to pay rent against a GCEL-protected tenant, which is the functional equivalent of a for cause holdover proceeding to terminate a rent-regulated tenancy insofar as the legislature has stated that such a default is curable upon payment of the rent due "whether characterized as a nonpayment, objectionable tenancy, or holdover proceeding, the underlying basis of which is the nonpayment of rent . . . " (RPL 216(3)).

Footnote 4:In this regard, the court notes that Petitioner's evidence was limited to an affidavit from its managing agent, in which he states that the building was vacant in 2014-2015 when it was gut renovated, that over 75% of the building-wide systems were replaced, and that this work did not require a new certificate of occupancy as a "Type 2 Alteration" (NYSCEF 5). The court further takes judicial notice of the Department of Building's website reflecting the issuance of various permits for interior renovations during this period (see King-Knights v Hall, 83 Misc 3d 130 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]). While this proof might have been insufficient had Respondent appeared and taken issue with the building's regulatory status (see Ortiz v Dharmnath, 83 Misc 3d 38 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]; 867-871 Knickerbocker, LLC v Poli, 108 NYS3d 266 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019]), in a default judgment posture the moving party need only "allege enough facts to enable the court to determine that a viable cause of action exists" (Lugo v Corso, 215 AD3d 944 [2d Dept 2023], quoting Katz v Blau, 173 AD3d 987 [2d Dept 2019]).